235 So.2d 848

SMITH–KELLY SUPPLY COMPANY, Inc.

v.

Caesar L. BRYANT.

I Div. 524.

Supreme Court of Alabama.

May 28, 1970.

Johnston, Johnston & Nettles, Robert G. Kendall, Mobile, for appellant.

**714**

Diamond, Lattof & Favre, Mobile, for appellee.

PER ·CURIAM.

This is an appeal by defendant from a jury verdict and judgment awarding plaintiff $27,000 for personal injuries sustained in an automobile accident.

On December 3, 1965, shortly after 9:00 A.M., plaintiff Caesar L. Bryant, was driving his Volkswagen panel truck along First Avenue at a speed of 12 to 15 miles per hour proceeding towards Highway 45, City of Mobile, when his vehicle was hit from the rear by a Smith-Kelly cement truck, driven by Leonza King, an employee of defendant then returning from a deliv-

ery of concrete for his employer. The weather was clear. Plaintiff sustained a scalp injury requiring seven stitches and other injuries. He was thereafter taken to Mobile General Hospital for treatment.

After receiving first aid, plaintiff was permitted to return home. Several days later he entered Providence Hospital.

The complaint, charging negligence was in two counts, Count One seeking a recovery for personal injuries and Count Two seeking a recovery for property damage in the sum of $550.00. Defendant filed pleas of the general issue and contributory negligence.

Following the verdict and judgment, defendant filed a motion for a new trial which was overruled.

Appellant here makes twenty-two assignments of error but groups them, in argument, under five classifications.

There were nine witnesses who testified, including four doctors. They were Dr. Zieman, plaintiff's family physician and Dr. Neely, an orthopedist, called into the case by Dr. Zieman and who later operated on plaintiff. Dr. Robert Mudd, a neuro-surgeon, examined plaintiff, at the request of Dr. Zieman, shortly after the accident. Dr. Devane saw plaintiff in April of 1966, and later in June of 1966, but did not treat him.

The lay witnesses were the drivers of the two vehicles, a passenger in the plaintiff's car, a driver of a vehicle meeting and passing plaintiff's car, but who did not witness the accident. The witness, L. M. Bullock, a claims specialist who did not see the accident, testified regarding plaintiff's activity some six weeks after the accident.

While the liability was contested, most of the evidence appears to be directed to the nature and extent of any disability suffered or sustained by the plaintiff as a result of the accident. Photographs of the scene show a straight center stripe on a

paved roadway. The driver of defendant's truck admitted seeing plaintiff's vehicle "a block and a half, or two blocks away." He also contended that plaintiff's vehicle made a sudden and unknown stop, and "didn't give no signal."

Plaintiff, age 43, worked as a stevedore. He is married and has seven children. His earnings for eleven months work in 1965 were approximately $5,500.00.

Hospital records show four separate admissions from December 9, 1965, up to date of trial in January, 1968. He was confined in the hospital approximately fifty-three days. He was treated at home or on office visits to Dr. Zieman on other occasions. There was evidence that plaintiff needed further surgery in connection with a disc condition. His doctor stated he has a substantial permanent disability and at the time of the trial he was not able to do any work.

### Assignment of Error No. 6

The witness, Dr. Zieman, was asked the following question on direct examination:

"Q. Yes Sir, was his condition such when you first saw him after this accident, in your opinion, that he would be able to work?"

An objection by defendant was overruled and the witness answered.

"A. I think he was having a lot of pain and discomfort, and I believe going back to work would have caused him to have more pain and more discomfort at that time."

We note that the witness did not answer the question, but gave an answer dealing with possible physical effects to the plaintiff, if he worked: "There cannot be reversal of judgment because improper questions are propounded to witnesses unless it is shown that in response to them improper evidence is elicited and admitted." We conclude no error here. Butler v. Hughes, 264 Ala. 532, 88 So.2d 195.

### Assignment of Error No. 1 and No. 4

Appellant requested the general charge, contending there was a failure of proof that the accident occurred on First Avenue, in the City of Mobile, Alabama, as alleged in the complaint. Without agreeing with this contention, we note there was no compliance with Circuit Court Rule 34, Code 1940, Title 7, appendix. At most, this constituted a variance and required notice to the Court under this rule, before the Court could be put in error in refusing the general charge. Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379.

Moreover, we feel the evidence was fully sufficient to permit the jury to find the locale of the accident was as alleged in the complaint. The photographs of the scene of the accident showed paved streets. Homes on each side of the street appear in normal alignment. Utility poles carrying numerous wires with street lighting indicated. Also street traffic signs, one a school crossing, were shown. Plaintiff's first witness stated the photograph (Exhibit #1) "substantially represented First Avenue, as soon as you come out of Kayti Street, looking toward Highway 45." In addition, all of the streets were identified by the use of a blackboard.

We hold there was no error in failing to give the affirmative charge or in refusing to grant the motion for a new trial for this reason. Aplin v. Dean, 231 Ala. 320, 164 So. 737.

### Assignments of Error 8 through 19, inclusive

These assignments all relate to proof offered and accepted relating to medical and hospital bills received by the plaintiff, and claimed as part of his damages. They are all related and are so treated in argument.

The bills were first identified as having been received, the charges being noted along with the amounts. Photostats of the bills are in the record and generally show they are made out to the plaintiff giving

his correct residential address. Further the day or date of services rendered was indicated in most cases.

These bills were offered in evidence and received over the objection of the appellant. One of the statements for services entirely disconnected with the accident was withdrawn. There was a limited ruling by the Court who stated: "I am going to admit them into evidence, as tendered, subject to a motion to exclude if reasonableness is not shown."

Later Drs. Neely and Zieman testified that the charges made in all of these bills were reasonable.

We hold under the circumstances the items were received into evidence without error, for the consideration of the jury.

There was no motion to exclude any of the bills nor were any affirmative instructions requested against allowing a recovery on any of the items. Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633; Aplin v. Dean, 231 Ala. 320, 164 So. 737; Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211.

### Assignment of Error #21

This assignment is based on the following ruling of the trial Court during the redirect examination of appellee's witness, Dr. Neely:

"Q. Assuming that Caeser Bryant had no complaints to his low back or neck and left shoulder area prior to his accident of December 3rd, 1965, that he was injured in an accident on that date and sustained severe pain to his left shoulder and neck area and generalized pain to the rest of his body and was hospitalized for a period of time shortly thereafter, at which time he was given pain medication, muscle relaxants, and subsequently attempted to go back to work in the month of March, at which time his low back pain became more pronounced. In your opinion under that set of circumstances would the lumbar disc that you described he has, in your opinion would

it be caused by that accident of December 3rd, 1965?

"MR. JOHNSTON: If Your Honor please, I wish to object for the simple reason that he is assuming about the low back in March and it has never been mentioned * * *

"MR. LATTOF: Caesar Bryant testified * * *

"THE COURT: Just a minute, please, sir. Just a second. All right. Start over again, please.

"MR. JOHNSTON: I say he is assuming facts that are not in evidence in asking this hypothetical question in that the doctor and every record shows that he never complained of any pain in his low back until the latter part of June.

"MR. LATTOF: Caesar Bryant has testified that he complained of his low back from the start, if your Honor please. That his main pain was up here (indicating) and included his low back.

"THE COURT: Overruled.

"MR. JOHNSTON: We except.

"A. Assuming all this, I would assume that very probably it was produced by an injury and if there had been no other injury, why this injury?

We quote from plaintiff's testimony on direct examination:

"Q. All right. Tell the jury when you got out of the hospital on December 24th, as best you recall, where you were hurting at?

"A. I was hurting in my left shoulder, I was having pains down through my finger, it was feeling numb-like a pin sticking in it, and *this lower part of my back begin to get very numb.* The more you walked the worse it would get, just like if you would sit on your feet and, you know, you would get up and you wouldn't have no feeling on it." (Emphasis supplied.)

Appellant, in brief, under Statement of Facts, page 15, substantiates this complaint by plaintiff.

Later, the plaintiff was asked about his condition when he left the hospital on January 9, 1966, as follows:

"Q. And then you left and went home, what was your condition then?

"A. It was very poorly. He didn't release (sic) the pain very much in my head.

"Q. Where else besides your head were you hurting?

"A. Still hurting in my back and left shoulder it was very painful."

Also:

"Q. Now, about March, did you attempt to go back to work?

"A. Yes sir, I tried."

The plaintiff also testified he had never had any difficulty with his back or neck before this accident happened.

We note that earlier in the trial, the following questions were asked Dr. Neely:

"Q. What did the myelogram of Caesar Bryant that you examined at that time show?

"A. They showed a defect in the lumbar area of the back.

"Q. Well, how observing this one and talking with this man did you form an opinion as to the condition of his low back?

"A. I thought that he very probably had what is commonly known as a ruptured disc in his low back.

"Q. Doctor, assuming that he had no complaints of his low back prior to December 3rd, 1965, and assuming the onset of these symptoms shortly after the accident, in your opinion would the accident of December 3rd, 1965 have caused this condition?"

There was objection by defense counsel who stated:

"I don't see how we can ask a question where all the evidence has shown there was no complaint at all about his low back until the latter part of June."

The objection was properly overruled by the Court, as the hypothetical question did not deal with complaints by plaintiff after the accident, but referred to the "onset of these symptoms" shortly after the accident.

The witness answered: "Probably, yes sir."

We realize there was no assignment of error on this ruling but counsel discussed it in brief. Suffice it to note that the question and answer presented a jury question of the cause of plaintiff's low back injuries.

We hold that there was adequate evidence to support proof of the facts assumed in the hypothetical question and there was no error in the ruling of the Court presented by this assignment.

Assignment of Error #1

█ In motion for a new trial, the appellant, in grounds numbered, 7, 8, 9, and 10, asserts that the verdict was excessive, and should be set aside.

Here the plaintiff was in the hospital on four different occasions for fifty-three days during a period of slightly over fourteen months. He has almost total disability according to his family physician, and is unable to work at his usual occupation. He is faced with additional surgery which, even if successful, will leave some disability. His medical and hospital bills have been substantial. Further treatment, if required, will add to this amount. We can assume the jury considered the pain and suffering over this period of treatment. We also recognize the value of today's inflated dollar as a factor in determining the true value of damages awarded. Langdon v. Miller, 276 Ala. 195, 160 So.2d 479.

We have held that "the power vested in courts to disturb a jury's award of damages should be exercised with great caution." Also: "An appellate court should exercise this power with extreme caution where the trial court has refused to disturb the damages in considering the matter on a motion for a new trial." Jack Cole Co. v. Hays, 281 Ala. 118, 199 So.2d 659 (and cases cited therein).

Here we can find no justifiable basis for concluding that the amount of damages awarded by the jury was the result of bias, prejudice, or passion.

We find no errors in this record to reverse.

The foregoing opinion was prepared by J. Edgar Bowron, Supernumerary Circuit Judge, and is adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL, HARWOOD and MADDOX, JJ., concur.