268 So.2d 780

Sherron L. MERIWETHER, etc., et al.

v.

CROWN INVESTMENT CORPORATION, a corporation, et al.

6 Div. 879.

Supreme Court of Alabama.

Sept. 29, 1972.

Jack R. Evans, John A. Owens, Tuscaloosa, guardian ad litem for David L. Meriwether and Sharon Maria Meriwether, for appellants.

McQueen, Ray & Allison, Tuscaloosa, for appellees.

McCALL, Justice.

This is an appeal from the Circuit Court of Tuscaloosa County, Alabama, in Equity, wherein, pursuant to a jury verdict, a final decree in a declaratory relief proceeding was rendered in favor of the complainants, Crown Investment Corporation (Crown) and the First National Bank of Tuskaloosa, as trustee of the Gulf States Paper Corporation's Salaried Employees Pension Trust (First National), both appellees in the case. Title 7, § 164, Code of Alabama, 1940, provides for a jury trial in these suits, pursuant to the practice and proceedings in such court in which the cause is heard. In chancery, except when a trial by jury is given by law, such a trial is not authoritative and binding on the court, but is largely advisory. Tuscaloosa County v. Shamblin, 233 Ala. 6, 169 So. 234; Hill v. Lindsey, 223 Ala. 550,

137 So. 395; § 322 of Tit. 7, Code of Alabama, 1940.

The bill of complaint, as amended, seeking declaratory relief, alleges that the respondents, Sherron L. Meriwether and her to minor children, David L. Meriwether and Sharon Maria Meriwether, have represented that two stock certificates, each for 2500 shares of capital stock in Crown, were issued to respondent Sherron L. Meriwether, as custodian for each child, respectively, and it prays to have these stock certificates declared invalid. Respondent Sherron L. Meriwether holds the certificates in question as custodian for her two minor children under the Alabama Uniform Gifts to Minors Act. The ultimate issue involved the validity of the two certificates (2500 shares each). The advisory jury found that these two stock certificates were not valid, and the lower court entered its final decree in accord with this jury finding. This appeal followed.

It is not necessary for a complete understanding of this case that the facts be set out in detail. While pertinent factual matters will be set forth in conjunction with the appellants' contentions, where necessary, we observe that the facts of this case are in hopeless conflict. They relate among other matters to conflicting chains of title to the shares of stock in question, evidenced by two separate sets of stock certificates, which passed through different successive owners. Ultimately, one chain passed into the complainant First National Bank of Tuskaloosa, as trustee, one of the appellees, and the other, into Mrs. Meriwether, as such custodian, who with her two minor children are appellants on this appeal.

Two briefs have been filed for the appellants in the case, one for the appellant, Mrs. Meriwether, and another for her two appellant minor children. These briefs overlaps as to some, but not all, contentions.

Our attention is directed first to Mrs. Meriwether's assignments of error, numbers three and four, respectively, which recite: "3. The Court erred in overruling the objection of the Respondents to the following question propounded by the solicitor for the Complainants to the witness, Mr. Scott Black, (TR. 119): 'All right, sir. I will ask you, Mr. Black, if that book [the corporate minute book] contains minutes of the corporators meeting on December 30, 1963?'"; and "4. The Court erred in overruling the objection of Mr. Owens, the Guardian ad Litem for minor respondents, which objection is stated as follows (TR. 134): 'All right. Well, Your Honor, we object, because I don't think he can show that they are business records kept in the normal course of business.'" The minor appellants' related assignments of error are numbered 1, 4, and 5, and take the point that the admission of complainants' exhibit number nine, i. e., the minute book of Crown, was erroneous.

■ As to appellant Mrs. Meriwether's assignment of error number three, we note that her objection came after the witness had answered the question. The lower court then overruled the objection, and there followed no motion to exclude, or further objection. The rule is that objections to questions, the answers to which have already been received in evidence, come too late. There was no error in overruling this appellant's objection to the stated question. Coker v. Ryder Truck Lines, 287 Ala. 150, 249 So.2d 810; First National Bank of Birmingham v. Brown, 287 Ala. 240, 251 So.2d 204; Mobile City Lines, Inc. v. Hardy, 264 Ala. 247, 86 So. 2d 393.

Nor was there error in admitting the minute book of Crown in evidence, notwithstanding the book in question contained entries dating back to December 30, 1963, and the witness testified that he had not seen the book prior to February, 1966. The appellants' contention is that the witness cannot prove the entries in the book made prior to the latter date, and as a consequence, the minute book was not properly

authenticated and testimony from it was not admissible.

■■■ This court stated the following in McMillan v. Aiken, 205 Ala. 35, 45, 88 So. 135, 144, with reference to the admissibility of corporate minutes into evidence:

"The records of a corporation, including its minutes or other record of the acts of its incorporators, stockholders, members, directors, or trustees, are generally admissible as prima facie evidence in favor of and against the corporation and its stockholders or members 'on questions relating to the creation and organization of the corporation, performance of charter or statutory requirements, corporate proceedings after organization, and other like matters.' Terry v. Birmingham Nat. Bank, 93 Ala. 599, 608, 9 South. 299, 30 Am.St.Rep. 87; Bank, etc., v. Comegys, 12 Ala. 773, 46 Am.Dec. 278; Jones, Adm'r, v. Trustees Florence W. Univ., 46 Ala. 626; Duke v. Cahawba Nav. Co., 10 Ala. 82, 44 Am. Dec. 472; Mayor, etc., v. Wright, 2 Port. 230; 2 Cook on Corp. (6th Ed.) § 714, note 5, pp. 2226, 2227; 14 Corp.Jur. pp. 376, 377; 17 Cyc. 401; Highland T. Co. v. McKean, 10 Johns. (N.Y.) 154, 6 Am.Dec. 324; Vawter v. Franklin College, 53 Ind. 88; 12 Cent.Dig.Corp. § 118; 20 Cent.Dig.Ev. §§ 1400, 1352; 46 Cent.Dig.Trial, § 98; Angell & Ames on Corp. § 506. * * *"

It is likewise the rule with respect to the admissibility of a corporate stock certificate book. See Davis v. Lime Cola Bottling Works, 18 Ala.App. 562, 564, 93 So. 328, 331, where the court said:

"* * * This stub was relevant as tending to prove that the certificate of stock had been issued to appellant. The evidence showed it was the stock certificate book kept by appellee company, and the handwriting was that of one of the two officers of the company at the time it purports to have been written. 4 Thompson on Corporations (2d Ed.) § 3519, p. 123, states:

"'The stub of a book from which certificates have been detached has been held admissible as evidence of the issue of the stock'—citing Weber v. Fickey, 47 Md. 196.

"And in Oden v. Vaughn, 204 Ala. 451, 85 South. 784, the Supreme Court held:

"'A stock book is the evidence of ownership and the right to benefits and liability as such.'"

True, the corporate record book must be properly identified and sufficiently authenticated in order to lay a preliminary foundation for its admission into evidence. We think that this was done. The book was identified by the corporate secretary as being the official record of the minutes of the meetings of the corporation which was delivered to him as such when he became secretary by George Meriwether, one of the directors, and he testified that as secretary he accepted the book as the official minute book of Crown. There was testimony also, on direct and voir dire examination, that the signatures of the corporate officers, who signed the corporate minutes contained in the book, were familiar to the witness and were recognized by him as being the signatures of those corporate officers who purportedly signed the minutes. After he became corporate secretary the witness further testified that he kept the same minute book as such, and as such officer he entered the corporate minutes therein in the regular course of the corporate business, it being the regular course of the corporate business to make such record at the time of the event or act recorded, or soon thereafter. In our opinion, this testimony was sufficient to show that the tendered book was a record of original entry, made in the regular course of the corporate business and that it was the regular course of the business to make such record at the time of the act, transaction, occurrence, or event recorded, or within a reasonable time thereafter. The lack of personal knowledge by the entrant or maker may be shown to affect the weight of the

admitted record, but after the foundation is laid as outlined, the lack of personal knowledge does not affect its admissibility. The phrase "lack of personal knowledge" in the statute, Tit. 7, § 415, Code of Alabama, Recompiled 1958, has been held to mean lack of personal knowledge on the part of the entrant as to the truth of the matter stated in the entry. Mitchell v. City of Mobile, 244 Ala. 442, 13 So.2d 664; Mahone v. Birmingham Electric Co., 261 Ala. 132, 73 So.2d 378; Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 2, § 254.01(4), p. 255.

There is no merit in Mrs. Meriwether's assignment of error four, nor in assignments of error one, four and five of the appellant minors.

■ The appellant, Mrs. Meriwether, moved to exclude the evidence of the appellees on the ground that they had not made out a prima facie case. The lower court, in overruling this motion, stated: "Well, the Court thinks otherwise, and overrules your motion to exclude. So, proceed." Mrs. Meriwether contends that in making the above quoted comment, rather than simply overruling the motion, the lower court in effect commented on the evidence in violation of Tit. 7, § 270 of the Alabama Code.

Directing our attention to the record in this case, we find that the following occurred:

"MR. OWENS: May we approach the Bench?

"THE COURT: Yes, sir.

"(Whereupon, out of the hearing of the jury, in low audible tones, the following transpired:)

"MR. EVANS: Your Honor, we would like to move to exclude the evidence of the complainant on the grounds that it has not made out a prima facie case of adequate proof of the invalidity of the stock certificates Number Ten and Nine, held by the Respondents in this case, as set out in the pleadings of the Complainant.

"THE COURT: Well, the Court thinks otherwise, and overrules your motion to exclude. So, proceed.

"(Whereupon, beyond this point was had and done of record in open Court and in the hearing of the jury.)"

Presumptively what was had and done before the matter referred to in the last parenthesis next above, was not had and done in the hearing of the jury, because it is expressly stated in the record that the colloquy between the court and the solicitor transpired out of the hearing of the jury.

■ The argument is that the court's remark was prejudicial before the jury. The record makes it clear that the jury did not hear what transpired. Additionally, the appellant, Mrs. Meriwether, interposed no objection, exception, motion or other complaint to the court's remark at the time it was made. Thus, there was no preservation of error, and nothing is before this court for review.

■ The minor appellants contend that the trial court erred in requiring their solicitor to read into evidence from the deposition of the witness, E. E. Rivers, previously taken at the instance of the appellees, the following questions on re-cross by counsel for appellants, and, in turn, the indicated answers:

"Q. Mr. Rivers, have you ever been convicted of any offense involving moral terpitude [sic] in any cause?

"A. I've been convicted of speeding, but that's all.

\* \* \* \* \* \*

"Q. No felonies, no indictment for— Or arrest on felony charge?

"A. No."

When the deposition was being read into evidence and just at the beginning of the

reading of re-cross examination, appellants' counsel, Mr. Owens, who had originally asked the questions of Rivers, said that he did not offer these two questions and the answers thereto into evidence, as he had asked them only for impeachment purposes, for discovery. Appellees' counsel objected to the omission of any part of the deposition, and the trial court ordered these two questions and answers to be read into evidence along with the rest of the deposition.

In connection with the court's action in compelling the reading of the entire re-cross examination in the deposition, it appears that only two questions and answers were involved. These questions and answers were injected into evidence by the appellant at the taking of the deposition. The answers merely showed that the witness Rivers, then being examined, had never been convicted of any crime involving moral turpitude.

Admittedly, the court's ruling in the premise was in error, and admittedly the answers may have tended to bolster the witness' testimony.

Even so, because of the great mass of evidence tendered below, much of which supports the decree rendered, we do not think the appellants were probably injured in any of their substantial rights.

The purpose of showing a witness' prior conviction of a crime involving moral turpitude is to shed light on his credibility. If a witness has not been so convicted, we doubt that his credibility is thereby bolstered to any substantial degree, this for the reason that in most instances witnesses have not been convicted of crimes involving moral turpitude. Their credibility can be tested by cross-examination.

No error to reverse should be based on assignment of error no. 16. Supreme Court Rule 45.

The appellants next contend that the lower court erred in overruling a general objection to the whole line of questioning involving the conviction of crimes. This argument is based on the premise that the crime of evasion of taxes does not involve moral turpitude. The appellants cite Blackshear v. State, 33 Ala.App. 576, 36 So.2d 244, which held that a violation of the prohibition laws, which is punishable under the same federal statute as income tax evasion, i. e., 26 U.S.C. § 7201, does not involve moral turpitude. In *Blackshear* the prosecution on cross asked a witness " * * * on December 2, 1941, you plead guilty to a violation of the internal revenue Act and were put on five years probation, were you not?" The court, in holding that the question should not have been allowed, stated that there was no showing that the offense for which the witness was convicted involved moral turpitude, as the acts constituting a violation of the Federal Internal Revenue Acts ranged from minor misdemeanors to serious felonies. This case, then, merely stands for the proposition that certain violations of the Federal Internal Revenue Acts do, or may, involve moral turpitude, while others do not. There was no specific ruling as to a violation of the prohibition laws.

It is not disputed that a witness' credibility may be attacked by examining him as to prior convictions for offenses involving moral turpitude. Tit. 7, §§ 434 and 435, Alabama Code, 1940, Recompiled 1958. However, we have been unable to find an Alabama case, and counsel have cited none, involving the precise issue in question here. The cases in point from other states are divided on the question. 58 C.J.S. Moral Turpitude at page 1205; Words and Phrases, Moral Turpitude.

█ The crime of income tax evasion, under 26 U.S.C. § 7201, involves a willful and knowing attempt to evade taxes by the commission of some affirmative act. Proof of the specific intent to evade the tax is required for conviction. United States v. Peterson, 338 F.2d 595 (7th Cir., 1964), cert. denied 380 U.S. 911, 85 S.Ct. 896, 13 L.Ed.2d 798.

Moral turpitude has been defined as " 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen or to society in general.' " Lee v. Wisconsin State Board of Dental Examiners, 29 Wis. 2d 330, 139 N.W.2d 61. The inherent nature of the offense itself, rather than the mere fact that such acts are made criminal offenses, determines whether any given offense involves moral turpitude. This court is of the opinion that the better reasoned authorities hold that the offense of income tax evasion is one involving moral turpitude, and inquiry as to the commission of such crimes by a witness is a proper line of questioning.

A related contention asserted by the appellants concerns the overruling of their objection to the following question propounded to a witness, George Meriwether, by the appellees in the course of the trial below: "Now, Mr. Meriwether, I will ask you whether you have ever been convicted of a crime involving moral terpitude [sic]?" The appellants contend that this question was objectionable, citing Craven v. State, 22 Ala.App. 39, 111 So. 767, where the court disapproved of the question: "Have you ever been convicted * * * for an offense involving moral turpitude?" The court in *Craven* stated that the question was too general and called for a judgment of the witness as to what crimes involve moral turpitude, and suggested that the question be couched in terms of a specific crime, leaving to the court the determination of whether that particular crime was one involving moral turpitude.

But we need not rule on the basis of the *Craven* case alone, because it is settled that a judgment cannot be reversed because improper questions are propounded to a witness unless in response to such questions improper evidence is elicited and admitted. Butler v. Hughes, 264 Ala. 532, 88 So.2d 195; Smith-Kelly Supply Co. v. Bryant, 285 Ala. 712, 235 So.2d 848.

We have already determined that the crime of income tax evasion does involve moral turpitude, and such evidence is admissible for impeachment purposes. The response of the witness revealed only that he had been convicted of income tax evasion, which is not improper evidence. Hence the appellants' contention is not meritorious.

The court orally charged the jury in part as follows:

"* * * Also, any person, any witness who has been convicted of a felony involving moral terpitude [sic] then his evidence can be impeached. And you have the right to believe any part or absolutely none of that witness's evidence. And it is in the testimony that Mr. George Meriwether has been convicted of a felony involving moral terpitude [sic]. But again, that is for you to decide—whether you will believe his evidence or not. * * * *"

The minor appellants excepted to the above portion of the court's oral charge. We cannot say that the charge is faulty for the reasons assigned in brief by appellants.

The minor appellants argue that the court erred in asking a witness, William Smith, a certified public accountant, after he had testified as a witness for the appellees, whether he had discussed with Mr. Meriwether a summary of the stock ownership which he had made. William Smith answered that he had discussed the summary with Mr. Meriwether.

The minor appellants contend that this is inadmissible as hearsay. It is a fundamental proposition of law that the hearsay rule excludes only those out of court statements which are offered to prove the truth of the matter stated. Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 2, § 242.01(1), p. 199. The testimony referred to above goes only to the fact that a conversation took place, not the substance of that conversation; that is, the

court was inquiring only as to whether William Smith spoke to Mr. Meriwether, not what was said. While it may be true that the substance of the conversation, had the court inquired of it, would have been excludible as hearsay, it cannot be said that the mere inquiry as to whether the conversation took place is an out of court statement, as opposed to a fact of which the witness, who was available for cross-examination, had direct knowledge. Hence, the appellants' objection is not sustainable.

■■■■■ A related contention asserted by the minor appellants is that the lower court erred in admitting into evidence the summary done by William Smith from the duplicate stock book, which had previously been admitted into evidence. The minor appellants' contention is not well founded, for it is settled that if a fact to be proved requires an inspection of voluminous documents and such inspection is unreasonable or impracticable, a qualified witness who has examined such documents may testify as to the results of his computations if the mass of documents is made available to the opponent. Law of Evidence in Alabama, McElroy, 2d Ed., Vol. 2, § 220.01, p. 151. The appellants in this case had access to the duplicate stock book which had previously been entered into evidence.

We held in Navco Hardwood Co. v. Becks, 222 Ala. 631, 134 So. 4, that a written statement prepared by an accountant-witness as a correct summary of the entries in a voluminous book was admissible as part of his testimony. We see no distinction between the *Becks* case and the instant case.

■■■■■ The appellants have assigned other grounds of error, however, we do not reach them because the appellants have failed to comply with Supreme Court Rule 9, which states that "assignments of error not substantially argued in brief will be deemed waived and will not be considered by the court." We note that the mere in-

sistence of error without mention of authority, as in the instant case, does not amount to an argument. Alabama Electric Co-Operative, Inc. v. Partridge, 284 Ala. 442, 225 So.2d 848.

■■■ Counsel for the minor appellants also ask that this court fix the fee for representation as guardian ad litem on this appeal. In the lower court, counsel was awarded a fee of $3,250.00. Under the circumstances of this case, we feel an additional fee of $1200.00 for representation as guardian ad litem on this appeal is reasonable, said fee to be assessed as part of the costs. It is so ordered. Tit. 7, § 180, Code 1940; Commercial Standard Ins. Co. v. New Amsterdam Cas. Co., 272 Ala. 357, 131 So.2d 182; Alabama Farm Bureau Mutual Cas. Ins. Co. v. Mattison, 286 Ala. 541, 243 So.2d 490.

Affirmed.

HEFLIN, C. J., and MERRILL, COLEMAN, HARWOOD, BLOODWORTH, MADDOX and SOMERVILLE, JJ., concur.