294 So.2d 156

**Byron FOWLER et al.**

**v.**

**Syble FOWLER and Vecoy Landers.**

**SC 465.**

Supreme Court of Alabama.

May 2, 1974.

Wayne H. Smith, Heflin, for appellants.

Carl H. Merrill, Heflin, for appellees.

JONES, Justice.

This is an appeal by the proponents of the will of Elizabeth Howle, deceased, from the final decree of the Circuit Court of Cleburne County, which held that the contested will was not the true will of Elizabeth Howle.

The proponents, Byron Fowler, Clara Mitchell and Nell Garrett, filed a Petition for Probate of Howle's will in the Probate Court on February 20, 1973. The contestants, Syble Fowler, and Vecoy Landers, filed a Petition for Removal to the Circuit Court, and the proceedings were duly transferred on April 7, 1973. The contestants alleged mental incapacity, undue influence, and lack of due execution. The jury returned a verdict in favor of the contestants. Hence, the proponents appeal.

The assignments of error raise two points: 1) Did the trial Court err in overruling objections to expert testimony as to mental capacity? 2) Did the trial Court err in overruling the motion for a new trial on the ground that the verdict was against the great weight of the evidence? Finding no error, we affirm.

While a detailed restatement of the facts is not necessary to this appeal, a brief review may aid in understanding the factual context in which the issues arise.

On October 26, 1970, Fowler asked Dr. W. V. Clark, the physician who had been treating the testatrix, to examine Mrs. Howle. As a result, Dr. Clark admitted the testatrix to the hospital on October 27, 1970. On that same day, in proceedings initiated by the proponents, a hearing was held in the Probate Court in which the testatrix was declared to be a person of unsound mind, and Fowler was appointed legal guardian of the testatrix.

In late November or early December, 1970, the testatrix informed her attorney that she wanted to make a will. The attorney prepared the will in accordance with the instructions given to him by the testatrix, and he suggested that "since a guardian had been appointed, and, because of the family situation, the best thing to do would be to have a doctor attest her will."

On January 19, 1971, the contested will was executed in the office of Dr. Franklin Mercer following an examination of the testatrix. Dr. Mercer and his nurse were the attesting witnesses to the execution of the contested will. Dr. Mercer had not previously treated the testatrix. In addition to his attestation, Dr. Mercer also signed a note at the end of the contested will that "the patient here is mentally competent to execute this will."

The first assignment of error argued by the proponents raises the question of whether the trial Court committed reversible error in overruling the proponents' objection to a question propounded to Dr. Clark on direct examination as to whether " . . . having seen [Mrs. Howle] on December 13, 1970, if some thirty or forty days later, in your opinion, she would have been competent to execute a legal document?"

The grounds for the objection were that it called for a mental conclusion and asked about something that occurred subsequent to Dr. Clark's examination of the testatrix. After the objection was overruled, Dr. Clark replied: "In my opinion, the majority of them go one way, they get gradually worse. Their arteries get harder and they lose their minds—I mean it just gets weaker and weaker."

■■ While it is well established that a witness cannot give his opinion as to whether a person has testamentary capacity to execute a will, that determination being within the province of the jury (Case v. English, 255 Ala. 555, 52 So.2d 216 (1951)), it is also well established that a verdict cannot be reversed because of improper questions propounded to a witness unless, in response to such questions, improper evidence is elicited and admitted. Meriwether v. Crown Inv. Corp., 289 Ala. 504, 268 So.2d 780 (1972).

■ It is obvious from Dr. Clark's response, which was in medical terms and which did not abrogate the jury function, that there was no prejudice to the proponents to warrant reversal. Schneider v. Mobile County, 284 Ala. 304, 224 So.2d 657 (1969).

The second assignment of error is that the trial Court erred in overruling the proponents' objection to the following question:

"Dr. Clark, based on your observation and treatment of Mrs. Elizabeth Howle, having seen her on December 13, 1970, and found, in addition to her other ailments, the presence of Parkinson's disease, would you say that Mrs. Howle would have been able to sign that document in the manner that it's signed there?"

The grounds for the objection were that the proper predicate had not been laid to qualify Dr. Clark as a handwriting expert and that he was not qualified to answer that question.

If Dr. Clark had responded as a handwriting expert, there may have been prejudice. Dr. Clark's response, however, was from the vantage of his medical expertise—a physician who had examined and treated the testatrix. He qualified his answer in terms of his medical findings, which response would have been outside the competency of a handwriting expert or a layman. Accordingly, we find no error in the trial Court's ruling on this question.

The third error assigned by the proponents is that the verdict rendered by the jury was contrary to the great weight of the evidence. Before considering the "scope of review" question raised by the third assignment of error, it may be helpful to resolve who had the burden of proof. Houston v. Grigsby, 217 Ala. 506, 116 So. 686 (1928), provides the answer and stands for the proposition that, where there has been a prior adjudication of insanity of the testator, the burden shifts to the proponents to establish testamentary capacity when the will was made.

In *Houston*, the will of Irena Grigsby was contested. Four months before the will was executed, Mrs. Grigsby was declared mentally unsound by a jury and a decree in the probate court. She died two weeks after execution of the contested will. At page 508, 116 So. at page 688, Justice Anderson, speaking for the Court, stated:

"Sanity being the normal condition of the human mind, the law presumes that every person of full age has sufficient mental capacity to make a will, and casts on the contestant, in the first instance, the burden of proving mental incapacity at the time the will was executed, but, when the contestant has established habitual, fixed, or permanent insanity, as distinguished from spasmodic or temporary insanity at a time prior to making the will, the burden of proof is then shifted to the proponent, and he is required to show that the will was execut-

ed furing a lucid interval. O'Donnell v. Rodiger, 76 Ala. 222, 52 Am.Rep. 322, McBride v. Sullivan, 155 Ala. 166, 45 So. 902. We think *proof of the adjudication of insanity and that the intestate was under guardianship* of the probate court *when she executed the will was sufficient to cast upon the proponent the burden of establishing testamentary capacity when the will was made.* 7 A.L.R. note, page 595." [Emphasis supplied.]

The principles governing this Court's review on appeal of judgments from the trial courts are well established. Watkins v. Yeatman, 189 Ala. 370, 66 So. 707 (1914), stands for the proposition that the appellate court will not reverse the verdict as to a finding of testamentary incapacity unless the verdict is clearly wrong or unjust.

The impact of the contestants' offered testimony upon the jury can be illustrated by the following direct testimony of Dr. Clark.

"Q [by Merrill] Dr. Clark, in your opinion, in layman's terms, would you say that on October 26, 1970, at the time you signed this statement, would you say that Mrs. Elizabeth Howle was incompetent?[1]

"A [by Dr. Clark] I do, in fact, two or three weeks later they came to me and wanted me to change that, and say that she was competent because she wanted to change her will. I said, 'Well, you'll have to get another doctor. I'm retired out of the Navy and I draw retired pay, and they'd get me for unethical practice.'

"Q You said they wanted you to change that, who is 'they?' Is that Mr. Fowler?

"A Mr. Fowler is one of them—he wanted me to.

"Q That was only say two or three weeks after—

---

1. No objection was interposed to this question and there was no motion to exclude the answer in response thereto.

"A It was a short time, I didn't .put down no date—and I told him he'd have to get another doctor, which he could probably do. I said, 'You'll have to get someone else.' I won't change my mind on a medical diagnosis no time. I only make it one time, and I stick with it. I try to be right in the beginning. She had a very high blood pressure, I didn't think she'd live as long as she did.

"Q You state to the Court and jury that the last time you saw her, which was on December 13, 1970, in your opinion, she was still mentally incompetent?

"A That's correct."

In Gleichert v. Stephens, 291 Ala. 347, 280 So.2d 776 (1973), we stated:

"At the outset it is to be remembered that in determining the sufficiency of the evidence to support the verdict rendered below, this Court must accept as true the evidence most favorable to the appellee, and must indulge such reasonable inferences therefrom as the jury was free to draw . . .

" . . . Necessarily, a jury cannot depend on the basic facts alone; inferences must be drawn therefrom. A jury is like an artist who has been given various colors of paint. As the artist must mix and blend the colors and give them order to form a picture, so must a jury work with the facts they have been given to reach a verdict. Consequently, when the proof in a . . . suit reveals such a state of facts, whether controverted or not, from which different inferences and conclusions may reasonably be drawn, then the question . . . must be left to the jury."

 Indulging the inferences most favorable to the appellees, contestants, as demonstrated by the facts set out above, we hold that the verdict below was supported by the evidence and will not be disturbed.

Finally, the proponents assign as error the overruling of their motion for a new trial. Since we cannot say that the jury verdict is not sustained by the evidence, it cannot be said that the trial Court erred in denying the proponents' motion for a new trial. Indeed, we have long held that when, as here, the trial Court refuses to grant a motion for a new trial, the presumption of correctness of the jury verdict is strengthened. *Gleichert,* supra.

Accordingly, the judgment and verdict entered below is affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and McCALL, JJ., concur.