This is an appeal by the defendant, Alabama City Bank of Gadsden, from a judgment entered on a jury verdict in favor of the plaintiff, Walter J. Vaughn, for the sum of $18,600.00. Vaughn initially brought suit against the bank, alleging the conversion by the bank of $15,000.00 and also alleging $15,000.00 due on open account. Later, Vaughn amended his complaint by adding count three, alleging fraudulent representations by the bank.
Evidence was presented by way of Vaughn's testimony that, in the fall of 1975, Vaughn sold the business known as E Z Stop Grocery to a man named Gentle. In order for Gentle to get a loan at the Alabama City Bank of Gadsden, Vaughn co-signed a promissory note with Gentle and agreed to put $15,000.00 into a certificate of deposit to be held by the bank as collateral on the note for four years. Vaughn stated that later, in February, 1976, he sold his one-half interest in a building for $15,000.00. He said he placed that $15,000.00 in cash in a safe deposit box which already contained $4,000.00 or $5,000.00 at the time. To that total, Vaughn added $14,000.00 which he obtained from Coupon Redemption Company, so as to bring the total amount of cash in his safe deposit box to about $34,000.00.
Out of that total, Vaughn testified that he purchased a bulldozer for $5,000.00, a front-end loader for $5,300.00, and a lowboy for $1,800.00.
He stated that sometime later he took $15,000.00 in $100 bills out of his safe deposit box, put a rubber band around the money, which was about one and one-half inches thick, folded it, put it in his pocket, and carried it with him for about two days until he gave it to his wife. Other witnesses testified that they saw Vaughn with the stack of $100 bills during that time.
Mrs. Vaughn testified that she took the stack of money and put it in a hiding place in a closet, where it remained for about two weeks. She then took the money and went with Vaughn to the bank. At the bank, she gave the money to Vaughn and waited in the car while he went in alone.
Vaughn testified that, once in the bank, he was approached by a man who offered to help, but whom he cannot now identify. The man had an office at the bank and, after being led into it, Vaughn gave the man the $15,000.00 in cash in order to pay off the two notes. The man counted the money, placed it in his desk drawer, left the office and came back with the two notes.
Vaughn said that he then asked about how to receive the interest on the $15,000.00 certificate of deposit and was told that he would have to cash in the present certificate of deposit and purchase a new one in order to receive the interest at that time. Vaughn testified that the man, after receiving Vaughn's consent, left the office and returned with two cashier's checks, one for $15,000.00, representing the principal amount of the certificate of deposit, and the other for $790.00, representing the accrued interest thereon. *Page 1055 
Vaughn said that he endorsed both checks and the certificate of deposit and returned them to the man. The man was to have used the $15,000.00 in cash to pay off the two notes, the $15,000.00 cashier's check to purchase a new $15,000.00 certificate of deposit for Vaughn, and the remainder of the $15,000.00 in cash plus the $790.00 cashier's check was to be used to deposit $2,000.00 to Vaughn's account at the bank. Vaughn also received a slip to enable him to get "$300 something dollars" back in cash from the bank teller.
About a month and a half later, Vaughn was approached by Ferrell Cornutt, executive vice president of the bank, concerning the certificate of deposit. After some discussion, Cornutt checked the records of the bank and later gave a written statement to Vaughn indicating that no money of Vaughn's was held by the bank.
The bank records indicate a much different transaction than that testified to by Vaughn. They show that, on February 1, 1977, certificate of deposit number 969 was cashed, with the bank issuing to Vaughn and his wife a cashier's check in the amount of $15,000.00 for the face amount of the certificate and a cashier's check in the amount of $790.00, representing accrued interest on the certificate after computing the penalty for early withdrawal. Records further reflect that the proceeds from the certificate of deposit had been used to pay the loans reflected by the promissory notes executed by Vaughn.
An officer of the bank, although he had no recollection of the transaction, was identified by his writing and his stamp as being the person with whom Vaughn dealt. He testified that the transaction could not have occurred as Vaughn described because the bank's procedures dictated that, if a customer attempted to make a payment in money, he would be taken to a note teller for handling of the cash transaction. Also, there would be no necessity to reissue a certificate of deposit in order to change the manner in which the interest was paid.
At the close of Vaughn's evidence, the trial court granted the bank's motion for a directed verdict on the allegations of fraud. At the close of all the evidence, the trial court, after denying both parties' motions for a directed verdict, submitted the other two counts to the jury. The jury initially returned a verdict against the bank for "$15,000.00 plus interest." After additional instructions from the court, the verdict was returned against the bank for $18,600.00. The bank's motion for a new trial was overruled. This appeal followed. We affirm.
The bank first argues that Vaughn failed to prove that the bank ever had possession of Vaughn's money and that, therefore, the trial court erred in failing to grant the bank's motion for a directed verdict.
 "`A court should never direct a verdict when the evidence is such as to afford a reasonable inference of the existence of any fact unfavorable to the right of the party asking the affirmative charge to the verdict.' . . . Jones v. Bell, 201 Ala. 336, 77 So. 998 (1917)."
State Farm Mutual Automobile Insurance Company v. Boyer,357 So.2d 958, 962 (Ala. 1978).
After a review of the evidence, we hold that there was sufficient evidence presented through Vaughn's testimony to afford a reasonable inference that the bank had possession of Vaughn's money and, therefore, the court was correct in refusing to grant the bank's motion for a directed verdict.
The bank next argues that the following charges
 "Ladies and gentlemen . . ., I charge you that if you are reasonably satisfied from the evidence that an agent or employee of Defendant wrongfully appropriated fifteen thousand dollars in cash which was the property of the Plaintiff, then you must render a verdict — A judgment in favor of the Plaintiff in the amount of fifteen thousand dollars.
 "Ladies and gentlemen of the Jury, I charge you that if you are reasonably satisfied from the evidence that an agent or employee of Defendant misplaced fifteen *Page 1056 
thousand dollars in cash which was the property of the Plaintiff, then you must render a judgment in favor of the Plaintiff in the amount of fifteen thousand dollars."
given at the request of Vaughn, were prejudicial mistakes of the law, unsupported by the evidence and should mandate reversal.
Rule 51, Alabama Rules of Civil Procedure, provides, in part, as follows:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
The record fails to show a compliance by the bank with this part of Rule 51, ARCP. Therefore, error, if any, connected with these charges is deemed waived. Windsor v. General MotorsAcceptance Corporation, 295 Ala. 80, 323 So.2d 350, 353 (1975).
Appellant bank next argues that the trial court's labeling of some of the requested charges as "the charges of the plaintiff" violates Rule 51, ARCP, and thereby mandates reversal.
While it is true that Rule 51, ARCP, very plainly provides "[t]hose requests marked `given' shall be read to the jury without reference as to which party filed the request," and we note that its violation could constitute reversal, depending upon the facts of each case, it is also true that the bank once again did not timely object to the trial court's labeling of the written charges as per Rule 51, ARCP. Hogan v. AlabamaPower Company, 351 So.2d 1378 (Ala.Civ.App. 1977). Therefore, its objection has come too late and must be deemed waived.
The bank then asserts that Vaughn's attorneys persistently attempted to bring in evidence relating to criminal convictions of prior bank officers which the attorneys knew were inadmissible and, as a result, a mistrial or new trial should have been granted by the trial court.
A review of the record, however, only reveals to us that most discussions on this point occurred outside the presence of the jury and there was only one situation where Vaughn's counsel, in the jury's presence, specifically sought to bring out whether there were other occasions where money had "disappeared or been misappropriated or miscredited at the bank." At that time, the bank objected, was overruled, and the question was repeated. Another objection was made and overruled and the witness answered "not personally, I don't have." At that time, there followed a discussion outside the presence of the jury and, upon the jury's return, the trial court instructed them to disregard the statements and questions of the attorneys.
 "There cannot be reversal of judgment because improper questions are propounded to witnesses unless it is shown that in response to them improper evidence is elicited and admitted."
Smith-Kelly Supply Company v. Bryant, 285 Ala. 712,235 So.2d 848, 850 (1970). We find no error here either.
The judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.