Glenn E. Hammett was indicted, together with John Marcel Olive and Roy C. Bright, Jr., for theft in the first degree. The three were also indicted for conspiracy to commit theft. The appellant, Hammett, and Olive were further charged with buying, receiving and concealing stolen property in the first degree. The jury found the appellant "guilty of theft in the first degree." Bright was found guilty of "conspiracy to commit theft in the first degree." All charges against Olive were dismissed on the last day of trial.
The trial judge sentenced the appellant to a term of nine years, such sentence to be split with one year to be spent in the county jail and the remaining time to be served on probation. The appellant was also ordered to make restitution into court for the benefit of Baptist Memorial Hospital in the amount of $31,086.00.
Scott Flack testified that he worked for Independent Silver Reclaimers (hereinafter referred to as ISR) from the summer of 1981 until the summer of 1982. ISR was in the business of purchasing medical x-ray film and silver flake solution from various hospitals throughout the state and the brokerage of film to the refinery.
One of Flack's duties was to keep the ledger for ISR. Entries on the ledger were made based on receipts of material brought into the office. When silver flake and x-ray film were picked up from hospitals, a receipt would be made with a description, the amount of material and the payback due to the customer.
Flack stated that, although ISR did not have a contract with Baptist Memorial Hospital in Gadsden, Alabama, they did business with the hospital and the appellant handled that account.
Flack testified of receipts for silver bearing material from Baptist Memorial Hospital and an individual named Roy Bodine.
Becky James, the secretary for ISR for the period of time in question, stated that when receipts for material were brought in, she would log it in the purchase journal and file the receipts. James testified that the receiving reports were filled out by the person who picked up the film. She said the appellant would sometimes fill out a receipt on an envelope or a napkin or whatever was handy.
James testified that ISR had accounts with Baptist Memorial Hospital and Roy Bodine. The appellant handled both accounts and sometimes picked up the material from these accounts. *Page 1332 
Jerry Moore testified that he worked for ISR from December, 1981 until June, 1982. During that time he often picked up film for ISR. When he would go out to pick up film he would weigh it, write up a receipt for the customer and then bring the film back to the office.
Moore stated he picked up film at Baptist Memorial Hospital in Gadsden on several occasions. Each time the film would be weighed and he would make out a receipt to the hospital. Roy Bright may have been the person he dealt with at Baptist Memorial.
Jerry Bryan Burks ran the refinery for ISR. He would check the film into the refinery when it was brought in. The film usually had on it the place from which it came. He testified he did not know Roy Bodine.
Larry Lemon, who was also employed with ISR at one time, went to Baptist Memorial Hospital with the appellant's son to pick up some film. On this occasion the appellant's son talked to Roy Bright when the film was picked up. The film was never weighed and no receipt was given to the hospital.
Bright told the appellant's son that he and the appellant would get the weights straightened out later.
The film was then taken to the ISR office.
Mike Alredge testified that he worked for ISR from December, 1981 until March, 1983. He picked up solution and film from hospitals in the Birmingham, Anniston and Pell City areas.
After ISR was acquired by MIF Refining, Alredge became an employee of MIF Refining. MIF Refining acquired the records of ISR and Alredge did a survey of those records in an attempt to find business accounts with which Alredge was not familiar. The business records of MIF Refining were admitted into evidence including those records acquired through the purchase of ISR. One of ISR's customers was Roy Bodine. In an attempt to secure new business, Alredge tried to locate Bodine but was unsuccessful.
Jack Thomason stated that his company, MIF Refining, acquired ISR in July, 1983. When he talked to the appellant about some of ISR's customers, the appellant named Roy Bodine. The appellant told him he had a special relationship with Bodine and had acquired radio graphic film and other silver bearing substances from Bodine over a period of time.
The appellant asked Thomason if he could handle the business with Bodine due to his past dealings with him. Later the appellant told him that Roy Bodine and Roy Bright were the same person.
Jerry Baker, the associate executive director of Baptist Memorial Hospital in Gadsden, Alabama, testified that one of his responsibilities was the supervision of the radiology department. Roy Bright was the chief technologist of the radiology department at the hospital and was responsible for the handling and disposal of silver flake and film from the hospital.
The hospital did not have a contract in 1981 with ISR but did do business with them. There was no contract made by the hospital which allowed Bright to receive any portion of the by-products from the x-ray department.
Sometime in 1981 the appellant approached Bright and told him, if the hospital would collect the silver from the films and give it to ISR, they could smelt it and return it to the hospital in a different form. In this way the hospital would receive more silver. The hospital agreed.
Bright was responsible for the by-products of the x-ray film and the transactions with the appellant.
Once the silver was smelted, the hospital would receive it back in silver bars which were kept in the hospital's safety deposit box.
At some point, the silver bars were turned over to Bright to sell. He sold them to the appellant for $40,000. The check was returned for non-payment and the hospital eventually recovered $30,000. *Page 1333 
Baker said he did not know that any x-ray film had been stolen from the hospital. The hospital received more silver than they had previously received after the arrangement was made with ISR.
Larry Waefler, an auditor with the State Medicaid Quality Control Unit, made an audit of Baptist Hospital. In connection with the audit he reviewed the records of ISR. In reviewing the records almost each transaction to Baptist was followed by a transaction to Roy Bodine. The amount of silver received from the hospital and Bodine was almost always the same.
When Waefler talked to the appellant about Roy Bodine the appellant told him that Bodine was a customer of the company who always brought his products to Boaz to sell. He said Bodine lived somewhere in south Alabama and didn't have a telephone. He didn't know how to contact Bodine.
Waefler made a diligent search to locate Bodine through the Department of Public Safety, the Department of Industrial Relations and the Department of Revenue. All of these were unsuccessful.
John Marcel Olive, the appellant's co-defendant, testified that he was a partner in ISR with the appellant. He stated that the appellant and Bright made an agreement to split some of the silver that was being received from the hospital. Olive and the appellant came up with the name of Roy Bodine.
The account for Bodine was for film and silver flake received from Baptist Memorial Hospital. Olive wrote a check to Bodine, endorsed it, cashed it and gave it to the appellant.
 I
The appellant challenges his conviction on the ground that the State failed to prove a prima facie case.
The indictment in this case charged that the appellant ". . . did knowingly obtain or exert unauthorized control over silver flake and x-ray film, the property of Baptist Memorial Hospital of Gadsden, Alabama, of the value of 38,747 dollars, with the intent to deprive the owner of said property, in violation of Sect. 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama." (R. 345).
We have set out herein the evidence in this case and hold that there was sufficient evidence presented at trial from which the jury could conclude, by fair inference, that the appellant was guilty of theft in the first degree beyond a reasonable doubt.
 II
When ISR was purchased by MIF Refining, the business records of ISR became the property of MIF Refining. These business records of MIF Refining were introduced and admitted into evidence. The appellant objects to the admission into evidence of these records because the witness was not the custodian of the records at ISR.
Rule 44 (h), A.R.C.P. provides:
 "Business Entries. Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event shall be admissible in evidence in proof of said act, transaction, occurrence or event, if it was made in the regular course of any business, profession, occupation, or calling of any kind, and it was the regular course of the business, profession, occupation or calling to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. Such a writing may be photostated, or it may be photographed or microphotographed on plate or film, and such photostat, photographic or microphotographic plate or film, or prints thereof, whether enlarged or not, shall be deemed to be an original record and shall be presumed to be a true and correct reproduction of the original record it purports to represent. The circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, and the circumstances of making such photostat *Page 1334 
or other photographic copy thereof, may be shown to affect its weight but they shall not affect its admissibility. Any person having a right to have an original record preserved or to inspect the original writing or record or other rights in connection therewith shall have the same rights as to any photostat, photographic or microphotographic plate or film or prints made therefrom, in the event the original is not available, and custodian of such plate and film shall provide for the ready location of particular records so reproduced and shall provide a projector or other convenient means for viewing the records so reproduced by those entitled thereto and said custodian shall furnish a legible print or copy of such plate or film to such persons as are entitled to a copy of the original record."
The business entries exception to the hearsay rule is also applicable to criminal proceedings. See C. Gamble, McElroy'sAlabama Evidence, § 254.01 (6) (3d ed. 1977) and cases cited therein.
Mike Alredge testified that he worked for both ISR and MIF Refining. He stated that the records were kept in the regular course of business at both ISR and MIF Refining. Although Alredge was not the custodian of the records at ISR, he was custodian of the records at MIF Refining.
The State contends the records were properly admissible even though Alredge was not the custodian of the records at ISR and cites us to the case of Meriwether v. Crown InvestmentCorporation, 289 Ala. 504, 268 So.2d 780 (1972).
In Meriwether, supra, the Alabama Supreme Court stated:
 "Nor was there error in admitting the minute book of Crown in evidence, notwithstanding the book in question contained entries dating to December 30, 1963, and the witness testified that he had not seen the book prior to February, 1966."
Meriwether, supra at 508, 268 So.2d 780.
Therefore, we hold that the business records of MIF Refining (which included those of ISR) were properly admitted into evidence although Alredge was only custodian of the records at MIF Refining.
 III
The appellant contends that statements made by him to Joe Sutton and Larry Waefler were admitted into evidence in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
The circumstances surrounding the statement made by the appellant are as follows: Sutton, an investigator with the Medicaid Fraud Division of the Attorney General's Office and Waefler, an auditor with the State of Alabama Medicaid Quality Unit, went to the home of the appellant and knocked on the door. When the appellant answered the door, Sutton and Waefler identified themselves and were invited inside. A conversation then ensued in which the appellant made certain statements.
The State contends in its brief that the appellant was not entitled to Miranda warnings because he was not in custody. We must agree.
In a similar case, Peevy v. State, 460 So.2d 248
(Ala.Crim.App.), cert. denied, 460 So.2d 248 (Ala. 1984), this court held that Miranda, supra was not violated by the admission into evidence of statements made by the defendant to a state auditor. Our court in Peevy, supra, relied on Beckwithv. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1
(1976) as authority.
 "In Beckwith, Internal Revenue Service agents interviewed a taxpayer at his office and at his home regarding potential criminal income tax violations. A criminal investigation admittedly had already commenced at the time of the interview.
The court stated:
 `The interview with the government agency in a situation such as the one shown by this record simply does not present the elements which the Miranda court found so inherently coercive as to require its holding. Although the "focus" of an investigation may indeed have been on Beckwith at the time of the interview *Page 1335 
in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the Miranda court as the basis for its holding. Miranda specifically defined "focus", for its purposes, as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 16 L.Ed.2d 694, 86 S.Ct. 1602.'"
Peevy, supra at 252-253.
Based on our holding in Peevy, supra, we find that the appellant was not in custody when he made the statements to Sutton and Waefler. Therefore, the statements at issue were properly admitted into evidence.
 IV
The appellant's contention that the State failed to prove the requisite value of the silver to constitute theft in the first degree is without merit. Although there was not any testimony as to the value of silver (only the amount of silver) the value of the silver was contained in the State's exhibits. (See R. 402, 423, 425, 427, 431).
The trial judge charged on all three degrees of theft. Since there was evidence before the jury that the value of the stolen silver was over $1,000, the question as to the degree of theft was a question for the jury which they properly decided under this evidence.
 V
The appellant asserts that venue should have been in Marshall County (where ISR was located) rather than in Etowah County. The basis of this assertion is that the appellant took the silver from the hospital with their consent and the theft did not occur until the silver was brought back to ISR and the bookkeeping entries were falsely made.
We disagree. The appellant had the consent of the hospital to take the silver which he would return to the hospital in a different form. The hospital certainly did not consent to the appellant's taking of silver which he did not intend to return. When the appellant received the silver he did not intend to return to the hospital, the theft occurred.
If the jury can reasonably infer venue from all the facts and circumstances adduced at trial, proof of venue is sufficient.Coleman v. State, 423 So.2d 276 (Ala.Crim.App. 1982); Allen v.State, 374 So.2d 447 (Ala.Crim.App. 1979).
We hold there was evidence presented at trial by which the jury could have inferred that the theft occurred in Etowah County. Venue was properly proven in this case.
 VI
The appellant contends that the amount of restitution ordered by the trial court was improper because the court used an arbitrary figure to determine the amount of restitution.
Rule 10 (a)(5), Temporary A.R.C.P. states:
"Imposition of a Fine or Restitution.
 "If the court is given authority to impose a fine or to order restitution, the court in determining whether to impose a fine or to order restitution and in determining the amount, should consider:
 "The amount of gain derived by the defendant or loss sustained by the victim as a result of defendant's commission of the offense, which amount shall be determined by the court from evidence presented at the sentence hearing if not stipulated by the parties."
At the sentencing hearing, the trial court heard evidence concerning the amount of restitution from both sides. The State contended that during the time this theft occurred the price of silver fluctuated from $6.00 to $14.00 an ounce. The State asked for restitution in the amount of $13.71 an ounce because this was the price that the hospital sold all of the silver that they had received from ISR. The appellant contended the price of silver fluctuated from $5.00 to $8.00 during this time. *Page 1336 
Since the theft occurred over a period of time and the price of silver fluctuated during that period, the trial judge took a median figure of $11.00 an ounce to determine restitution.
Due to the fact of the continuing nature of the theft and the fluctuating price of silver, we do not find that the trial court's action was arbitrary in determining the amount of restitution. There was no abuse of discretion here.
Further, the appellant did not object to the trial court's final figure.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.