231 So.2d 336

**Jo Ann DOWNS**

v.

**STATE.**

**8 Div. 13.**

Court of Criminal Appeals of Alabama.

Dec. 9, 1969.

Rehearing Denied Jan. 13, 1970.

Powell & Powell, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Robert E. Morrow, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant, Jo Ann Downs, was indicted for murder in the first degree for the

killing of her husband, Charlie Cliff Downs. She was convicted of murder in the second degree. Her punishment was fixed at ten years in the penitentiary.

Charlie Cliff Downs was killed the night of December 26, 1966. The cause of death was six pistol shot wounds in the head, fired from a .22 Caliber Berretta pistol held 8 to 10 inches from his head. The pistol was a Christmas gift from deceased to his wife, Jo Ann Downs.

Early on the morning of December 26, 1966, the deceased, one Bryan Hendrix and several others met at the home of McKinley Walker to go rabbit hunting. Appellant came later in the morning and left her young step-son with Mrs. Walker. The child had been ill the night before and appellant needed sleep. At this time appellant had with her a Berretta blue steel .22 Caliber pistol her husband had given her for protection because she had received several mysterious harassing telephone calls.

The hunting party returned to the Walker home around 4:00 p. m. The appellant was present but she ate quickly and went home. The men ate supper at Walker's and the deceased and another man took a drink of whiskey from deceased's bottle. Deceased invited Hendrix to go home with him and they arrived there about 5:00 p. m. Defendant fixed a drink of whiskey for Hendrix, but, at her request, deceased did not take a drink. Deceased and Hendrix went to the basement and engaged in target practice with deceased's .45 pistol. Defendant left to pick up her maid at the bus station and Hendrix left shortly thereafter.

Appellant and the maid reached home around 6:30 p. m. The maid, Blanche Nichols, testified she went to bed about 8:30, and at that time defendant, deceased and the child were already in bed. The maid was awakened around 10:00 by defendant who said her stomach was griping and she asked the maid to drive her to the hospital. The deceased came out to the carport in his pajamas and asked where they were going. At the hospital defendant was given a shot of demerol and two sleeping pills administered on the advice of her physician, Dr. Hames. The doctor testified the effect of this medicine would be to sedate and calm the defendant. The drugs would take effect in 15 to 20 minutes and would last for about four hours.

The maid drove the car and they reached home about 10:30. The maid testified that when they got home the deceased was in the den watching television. Mr. and Mrs. Downs were in the den when she went to bed at about 10:35. She fell asleep immediately and was awakened about thirty minutes later by Mrs. Downs' coming into her room and telling her Mr. Downs had been shot.

The defendant testified that when she was leaving home to go to the hospital her husband came out to the carport in his pajamas and asked where she was going. This was around 9:30 or 9:45 and she never saw her husband alive after that. She was gone about thirty minutes and when she returned home she went to the kitchen for a glass of water, took two pills and went to bed. The television was not on and the lights in the den were off. She dozed for five or ten minutes and got up to go to the bathroom. While she was in the bathroom she heard coughing sounds in the room where her husband was sleeping. She took cough medicine to the deceased and found him in bed with his head lying in a pool of blood.

When she came home from the Walker's in the afternoon she placed the pistol on the refrigerator in the kitchen. When she returned from the bus station after meeting the maid, the pistol was lying on the kitchen table and it was still there when she went to bed and when she came out of her husband's room after she found him dead.

■ The record in this case is voluminous. Much testimony was introduced

concerning the marital difficulties of the couple, caused partly by deceased's drinking habits, defendant's poor health and her husband's impatience with her physical problems. The evidence was conflicting as to whether the door to the carport was open or closed. There was testimony to the effect that the house was in a secluded area and there were no close neighbors on the side of the house the carport was on and as to whether footprints could have been seen in that vicinity. The evidence was also conflicting as to whether the defendant told police officers she heard coughing and a sound like firecrackers coming from her husband's room. No useful purpose would be served in setting out this evidence. Suffice it to say that the facts and circumstances presented questions for the jury's determination and was sufficient to sustain the verdict. There was no error in denying the motion to exclude the state's evidence, in refusing the requested affirmative charge nor in overruling the motion for a new trial.

■ During the state's attorney's argument to the jury the following occurred:
"Mr. Sherman Powell: We are going to object to the statement of the Solicitor—

"The Court: I sustain the objections as to what the Solicitor knows personally. You might say Mr. Nelson, from the evidence in the case, not what you personally know, the Supreme Court has ruled on that personally—

"Mr. Nelson: I apologize to the Jury and to the Court—

"Mr. Sherman Powell: I would like to get in the record the objection, the De-

fense objects to the State's Prosecuting Attorney stating, 'I know in my own heart this Defendant blowed her husband's brains out,' we object to that statement.

"The Court: Yes, and that was the remark to which the Court just addressed its ruling and the ruling is that I sustain the objections to the remark.

"Mr. Nelson: Your Honor, I would like at this time on my own motion to move to exclude that.

"The Court: Well, its excluded, don't consider that statement and you can go ahead."

While argument of counsel similar to that made by the district attorney to the jury has frequently been condemned, here the objection was sustained, the remark promptly excluded and the jury instructed to disregard the statement. We are of opinion the court's action removed any prejudicial effect of the attorney's statement. Johnson v. State, 242 Ala. 278, 5 So.2d 632; Norris v. State, 236 Ala. 281, 182 So. 69; Myhand v. State, 259 Ala. 415, 66 So.2d 544.

■ The principles of law contained in the several requested written charges refused to defendant were substantially and fairly given to the jury in the court's oral charge or in charges given at the request of defendant.

We have carefully considered the entire record as required by Code 1940, Title 15, Sec. 389, and consider that the judgment below is due to be affirmed.

Affirmed.