[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 413 
Gary Wade Williams was indicted for the murder of one Sandra Sisk Phillips in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant guilty as charged in the indictment and the trial judge sentenced him to life imprisonment in the penitentiary.
On June 24, 1982, the body of Sandra Sisk Phillips was found in a shallow grave in a field off Riverton Road in Madison County. The body was located with the assistance of Terry Metler. In the search for the body, the skull of the victim was accidently struck by a pick axe.
Brenda Phillips, the wife of the victim's ex-husband, stated she was a bartender at the Red Lobster on March 4, 1981. That afternoon, she served several drinks to the victim and Beverly Metzler. The two of them left the Red Lobster together around dark.
Teresa Sisk, the victim's sister, testified she last saw her sister at approximately 11:30 a.m. on March 4, 1981 at Cher's Lounge in Huntsville. She admitted that her sister used drugs and was a prostitute at that time.
A few days before Sisk last saw the victim the appellant told her he needed to see her sister because she owed him $110 for drugs.
Barney Bynum, the appellant's nephew, stated that he and the appellant went to Buster's Lounge and met two girls. One of the girls was named Beverly whom he assumed was the appellant's girlfriend. He did not know the other girl's name. The four of them left Buster's and the two girls rode together in Metzler's car and he and the appellant rode together in his grandfather's car. Before they left, the appellant gave the girls some money to get some wine and cheese. They then met at the Barclay Motel. There were no vacancies so the four of them got into the car *Page 414 
Bynum was driving and went to the Travel Inn Motel where they rented Room 410.
At the room, they all drank some wine and the girls took some pills. A short time later, Bynum, and the girl whose name he did not know, engaged in sexual intercourse while the appellant and Metzler lay in the other bed.
When they started to leave, the girl became upset. The appellant told Bynum to take Metzler to her car because the girl wanted to talk to him. Bynum then took Metzler back to the Barclay Motel to pick up her car. They both then returned to the Travel Inn. He and Metzler went to Room 410 and the appellant said to give him a few more minutes. At this time, Bynum saw the girl sitting on one of the beds in the room. Bynum returned to his car and Metzler got in her car and left.
A short time later, a pickup truck drove up to the motel and a man got out and went into Room 410. Then the man, the girl and the appellant emerged from the room.
Bynum stated the girl was walking under her own power, but was being supported by the two men. The two men helped her into the truck and she and the man left. The last time Bynum saw the girl she was sitting upright in the cab of the truck. The appellant then got in the car with Bynum and they went home.
Dr. Josefino Aguilar testified he performed the autopsy on the body of Sandra Sisk Phillips on June 24, 1982. He stated that because of the length of time the body had been buried, he could not make a determination as to the cause of her death. He did not find any foreign missile inside the body and stated there was no evidence of blunt force trauma to the head. In his opinion, the victim could have been strangled, her throat could have been cut, she could have died of an overdose, or any number of things could have caused her death.
Beverly Metzler testified that she met the victim because both of them were dancers at a local club. On March 4, 1981, she met the victim at Cher's Lounge around 11:30 a.m. The two then left Cher's and went to the Red Lobster and began drinking.
While they were at the Red Lobster, she received a call from the appellant. Metzler admitted she had been a prostitute at this time and she knew the appellant because he was one of her customers. The appellant asked her to set Bynum up with a girl. The victim agreed to this plan so they left the Red Lobster and met the appellant and Bynum at Buster's Lounge.
The four then went to the Travel Inn Motel. Once there, she, the appellant and the victim all took demerol. Then the appellant injected Metzler and the victim with additional drugs.
After the victim and Bynum had sex, the appellant asked Metzler and Bynum to leave because he wanted to talk to the victim. They went outside and waited in the car. A short time later, Metzler went back to the room. The appellant appeared at the door with his gun holstered. Metzler then went into the room to get her keys. She did not see the victim and the appellant told her she was in the bathroom.
The appellant then told Bynum and Metzler to go home because Bynum would be in trouble for being late. He said he had some friends coming to help him. Bynum then took her to her car and she went home.
Sometime before March 4, 1981, the appellant told Metzler that he wished to kill the victim because she owed him money for drugs. He asked her to set the victim up. Sometime after March 4, 1981, the appellant told Metzler that the victim was gone and he was not worried about the body being found. He threatened to kill her and her daughter if she said anything.
Metzler admitted she was the appellant's mistress for a period of time. She stated she did not tell the authorities about the night of March 4 because she was scared of the appellant. She said she hated the appellant and wished he was dead or in prison and confessed she had had him shot. *Page 415 
John Hindman, III testified he was at his home on the night of March 4, 1981, when he received a call from the appellant. The appellant asked him to come to the Travel Inn Motel. When he arrived at the motel, the appellant emerged from the room with his gun holstered. Hindman went into the room and saw a body lying across the bed. He noticed blood around the nose area and saw track marks on the arm. When Hindman attempted to look at the body which was covered by a sheet, the appellant told him not to look because the body was too messed up.
Hindman and the appellant carried the body outside and placed it on the floorboard of Hindman's truck. The appellant then got into Bynum's car and Hindman followed them to the appellant's home.
The appellant then got in the truck with Hindman and they drove to Hindman's house. There they picked up Terry Metzler and drove out to Riverton Road and buried the body. On the way to the area where the body was buried, the appellant threw a plastic bag off the bridge.
Hindman admitted he had made a deal with the district attorney in exchange for his testimony.
Terry Metler testified he was Hindman's roommate during March of 1981. On the night of March 4, 1981, he and Hindman were watching television when Hindman received a telephone call. After the call, Hindman left and later returned with the appellant. The three of them went and buried the body.
On the way to the area where they buried the victim, the appellant told Metler he had killed the girl by hitting her on the nose because she had messed up a drug deal and he had gotten even with her.
Metler admitted he received Youthful Offender treatment in other cases in exchange for his testimony in this case.
The first defense witness was James Buttram, a toxicologist for the Department of Forensic Sciences. He received specimens of certain organs removed from the body of the victim and tested them for the presence of various drugs. He found methaqualone was present in several of the organs. In his opinion, the amount of the drug present in the body would probably be a lethal dose to a normal person. Buttram stated that if the drug was taken along with alcohol, the effect of the drug would be even greater. However, he did not test for the presence of alcohol in the body.
The appellant testified that on March 4, 1981, he called Metzler at her home and asked her to set up Bynum with a girl. He said he did not specifically request the victim.
He and Bynum met the girls around 7:30 p.m. at Buster's Lounge. From there, the girls left in a separate car to pick up some wine and cheese and he and Bynum drove to the Barclay Motel. When the girls arrived, he told them there were no rooms available so they all got in Bynum's car and went to the Travel Inn Motel and rented a room.
There, the girls took some pills and they all drank wine. After the victim and Bynum had sex, they decided to leave. The victim became ill and asked the appellant to take care of her. The appellant then told Bynum to take Metzler to her car. After they left, the victim began vomiting, so he called Hindman to pick up the victim and take her home.
When Hindman arrived, he helped the victim to Hindman's truck and she and Hindman left. At this time, the victim was alive and that was the last time he saw her. Then the appellant and Bynum went home.
The State put several witnesses on the stand who testified that the appellant had a bad reputation in the community.
The defense likewise put on several witnesses who testified to the appellant's good reputation and to the poor reputation of Metler and Hindman.
 I
The first issue which the appellant raises on appeal concerns several questions with reference to discovery. *Page 416 
 A
Initially, the appellant asserts that he was entitled to examine the statements of three of the State's witnesses, Beverly Metzler, Terry Metler and John Hindman, III, for purposes of impeachment during cross-examination of these witnesses.
 "In Cooks v. State, 50 Ala. App. 49, 276 So.2d 634, cert. den. 290 Ala. 363, 276 So.2d 640, it was held;
 `The first requisite necessary to secure for inspection production of a `statement' of a witness for use on cross-examination of the witness is that the statement must be one in writing prepared by him or prepared by another at his instance and signed by him or otherwise authenticated by him.'"
Beard v. State, 337 So.2d 1372 (Ala.Cr.App. 1976). See alsoPalerno v. United States, 360 U.S. 343, 79 S.Ct. 1217,3 L.Ed.2d 1287 (1959).
 "A statement, memoranda, or notes, not read by the witness interviewed and not signed or authenticated by the witness cannot be considered evidence. Mabry v. State, 40 Ala. App. 129, 110 So.2d 250. In this case, Harwood, J., writing for the court quoted with approval:
 `Perhaps the answer is best summarized in a statement by Cardozo, C.J., in People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 156 N.E. 84, 85, 52 A.L.R. 200, wherein he observed:
 `Documents are not the subject to inspection for the mere reason that they will be useful in supplying a clew whereby evidence can be gathered. Documents to be subject to inspection must be evidence themselves.'"
Cooks v. State, 50 Ala. App. 49, 276 So.2d 634, cert. den.290 Ala. 363, 276 So.2d 640 (1973).
During a recess in the trial, the trial judge allowed the appellant to examine the statements of these witnesses and to look at the notes of one of the detectives in the case concerning an interview he had with Beverly Metzler. Following the recess, defense counsel stated he had not had an opportunity to look at Hindman's statement. At this point, the trial judge learned these statements had not been signed or otherwise authenticated by the witnesses and refused appellant further access to these statements. (R. 140).
In light of the fact that these statements were not properly authenticated by the witnesses, we do not find error in the trial judge's ruling, not to allow the appellant to further examine these statements. Further, since the appellant had an opportunity to review these statements for a period of time, even though he was not entitled to the inspection of them, as a matter of right, we see no reason to assign error.
 B
Secondly, the appellant contends the trial judge erred because he failed to conduct an in camera inspection, as required by Ex Parte Pate, 415 So.2d 1140 (Ala. 1981), to determine if the statements made by Metzler, Metler and Hindman were inconsistent with their testimonies during trial, and whether the appellant's trial would be fundamentally unfair unless these statements were provided to defense counsel.
The most important aspect we must point out that distinguishes the Pate case from the one at bar, is that inPate, the Alabama Supreme Court specifically states that the statements involved had been authenticated by the witnesses. As we have previously stated, the statements in this case were not signed or otherwise authenticated by the witnesses.
While in Cooks, supra, we recommended that an in camera inspection be held when doubt exists whether there was a "statement", such was not the case here.
From our examination of this record, we can find no evidence that these statements had been properly authenticated. Therefore, we find no error in the trial judge's refusal to conduct an in camera inspection of the statements. *Page 417 
 C
The appellant maintains the trial judge should have allowed discovery of the criminal histories of Metzler, Metler, and Hindman. This issue has previously been decided by this court. In Wright v. State, 424 So.2d 684 (Ala.Cr.App. 1982), cert. den. 424 So.2d 684 (Ala. 1983), we stated:
 "There is also no absolute right to disclosure of the criminal records of the State's witnesses, see Mack v. State, 375 So.2d 476, 486 (Ala.Cr.App. 1978), affirmed, 375 So.2d 504 (Ala. 1979), vacated on other grounds, 448 U.S. 903, 100 S.Ct. 3044, 65 L.Ed.2d 1134 (1980), on remand, 405 So.2d 700 (Ala.), reversed on other grounds, 405 So.2d 701 (Ala.Cr.App. 1981), and authorities cited therein."
The trial judge did not abuse his discretion in denying the appellant's request for the production of this information.
 D
Lastly, appellant asserts he was denied equal protection and due process of law, guaranteed by the United States Constitution, because the trial judge denied him the opportunity to discover certain items when other defendants in other cases in this state have been allowed discovery of those items.
First of all, "[t]here is no constitutional right to discovery in a criminal case." Wright v. State, supra. See alsoReed v. State, 407 So.2d 153 (Ala.Cr.App. 1980), reversed on other grounds 407 So.2d 162 (Ala. 1981); Weatherford v. Bursey,429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); Thigpen v.State, 49 Ala. App. 233, 270 So.2d 666 (1972).
Secondly, discovery is a matter which is left to the sound discretion of the trial judge. In Re Bryan, 645 F.2d 331 (5th Cir. 1981); Oliver v. State, 399 So.2d 941 (Ala.Cr.App. 1981).
Since there is no absolute right to discovery and discovery is within the trial judge's discretion, the scope of discovery will vary depending upon the particular circumstances involved in each case. Merely because this appellant may have been denied discovery of certain items which other defendants have been allowed to discover does not constitute a sound reason for reversal.
Furthermore, from our examination of the record, the trial judge in this case was most lenient in granting discovery. As the trial judge stated on page 14 of the record, the appellant was allowed to inspect many items which he was not entitled to as a matter of right. We do not find that the trial judge abused his discretion by denying discovery of certain items in this case.
Therefore, we do not believe this issue rises to the status of constitutional magnitude so as to offend the equal protection and due process clauses of the United States Constitution (Fourteenth Amendment).
 II
The appellant argues that the x-rays of the victim were not properly authenticated and should not have been admitted into evidence because the person who actually made the x-rays did not testify at trial.
 "In Austin v. State, 354 So.2d 40, 42
(Ala.Cr.App. 1977), cert. denied, 354 So.2d 44
(Ala. 1978), we quoted with approval Gamble, McElroy's Alabama Evidence § 254.01 (3) (3rd ed. 1977), which discusses the authentication necessary to properly admit into evidence a business record:
 `In order to properly authenticate a business record, any witness (frequently the custodian of the record) must testify: `that the document now exhibited to him is a record of the business; that he knows the method (i.e., the standard operating procedure) used in the business of making records of the kind now exhibited to him; and that it was the regular practice of the business to make records of such kind and to make them at the time of the event recorded or within such specified period thereafter as could be found by the trier of fact to be reasonable.' *Page 418 
 "Once the above predicate is laid, the record is admissible even though the maker or entrant has no personal knowledge of the truth of the matter recorded. Meriwether v. Crown Investment Corporation, 289 Ala. 504, 268 So.2d 780 (1972); Speigle v. Chrysler Credit Corporation, 56 Ala. App. 469, 323 So.2d 360, cert. denied, 295 Ala. 420, 323 So.2d 367
(1975); McElroy's § 254.01 (2)."
Coleman v. State, 423 So.2d 276 (Ala.Cr.App.), cert. denied,423 So.2d 276 (Ala. 1982).
In the case at bar, Dr. Wayne Mitchell testified he is the radiologist supervisor at Decatur General Hospital and is the custodian of the x-ray records of the radiology department. He stated the x-ray records of the victim were under his control and he identified those records in court. He further stated that the x-rays of the victim were made in the ordinary course of business, and it is the regular business of his department to make and preserve such records. The x-rays of the victim have become a permanent part of her record at the hospital and were under his care and custody from the time they were made until the present.
We find the State laid the proper predicate for the admission of these x-rays into evidence and that they were properly authenticated by Mitchell. Therefore, the x-rays were properly admitted into evidence under the business records exception to the hearsay rule. Coleman v. State, supra.
 III
The appellant's contention that the trial judge improperly refused to give several of the appellant's written requested charges is without merit.
 "The refusal of a charge, though a correct statement of law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's general charge or in charges given at the request of parties."
Ala. Code § 12-16-13 (1975). See also Campbell v. State,423 So.2d 284 (Ala.Cr.App.), cert. denied, 423 So.2d 284 (Ala. 1982); Lambeth v. State, 380 So.2d 923 (Ala. 1979).
We have reviewed the refused charges and find that they were fully covered in the trial court's oral charge to the jury. Therefore, there is no basis of error to reversal on this issue.
 IV
The appellant's contention that there was insufficient evidence presented at trial to support a conviction is without merit.
We agree with the appellant that his conviction was based solely on circumstantial evidence. However, whether there was sufficient evidence to sustain a conviction was a question for the jury. Wicker v. State, 433 So.2d 1190 (Ala.Cr.App. 1983).
We have reviewed the record and have set out the evidence elicited at trial. This evidence was sufficient for the jury to conclude, by fair inference, that the appellant was guilty of the offense charged. This court will not substitute its judgment for that of the jury unless we find it to be wrong and unjust. Wicker, supra. We do not find it to be so in this case.Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1979); Johnson v.State, 378 So.2d 1164 (Ala.Cr.App. 1979).
 V
The appellant urges the trial judge committed reversible error when he refused to allow defense witness, Ben Giles Tipton, Jr., to testify about an alleged prior inconsistent statement of prosecution witness Terry Metler.
During the direct examination of Tipton, the following occurred:
 "Q Did you have a conversation with Terry Metler about John Hindman and Gary Williams?
"A Yes, sir.
 "Q Did Terry Metler tell you anything about Gary Williams?
"A Yes, sir. *Page 419 
"Q What did he tell you?
"MR. MORGAN: Objection, Your Honor. That's hearsay.
"MR. SIMPSON: Prior inconsistent statements.
"THE COURT: Come up here just a moment.
"(The following occurred at the Bench:)
"THE COURT: Did you ask Terry Metler this question?
"MR. MAUNEY: Yes, sir.
"THE COURT: What did you ask him?
 "MR. SIMPSON: I asked him, as I recall, if he was —
"MR. CRAMER: Now, wait. You asked him if he saw —
 "MR. MORGAN: Your Honor, could we have this outside the presence of the jury?
 "THE COURT: Ladies and Gentlemen, step into the jury room just a minute while we resolve this matter.
 "(The following occurred out of the presence and hearing of the jury:)
 "MR. SIMPSON: Judge, it is my best recollection that I asked Terry Metler if he knew Ben Tipton and if he had had a conversation with Ben Tipton about this defendant.
 "MR. CRAMER: You asked him if he had seen Ben Tipton in the District Attorney's office last Thursday and if they had any conversation with each other at that time.
 "MR. SIMPSON: It is my recollection that I asked him if he had a conversation with Ben Tipton, which conversation was oral.
 "MR. CRAMER: In the District Attorney's office, Fred.
 "MR. SIMPSON: It seems like to me that I asked the question."
". . ."
 "THE COURT: You didn't ask Terry Metler what his statement was or anything, did you?
 "MR. SIMPSON: Judge, I'm trying to remember what I did ask. I know I went into the question of Ben Tipton for the purpose of putting this young man on, and the best recollection that I have is that I did ask him if he had a conversation with Ben Tipton concerning this defendant.
 "THE COURT: And he said he didn't. Is that what he said?
 "MR. CRAMER: He said he saw him in the District Attorney's office Thursday when he came down from being with his probation officer.
 "THE COURT: I think that in order to do that you have to lay a predicate with the witness Terry Metler and that predicate is as follows: State when it was, where it was, the person to whom it was made, and the substance of the statement. I don't believe you have done that. I don't recall any testimony or any question that you asked Terry Metler if he made a statement in substance to this fellow. I don't believe you did that. Do you disagree?
 "MR. SIMPSON: Judge, I am trying to give you my best recollection. I wouldn't mislead the Court.
 "THE COURT: I have no recollection of your asking that question. Then this would not be admissible, this prior inconsistent statement, since you haven't asked Terry Metler if he made such a statement. Okay? Are you ready to proceed?
"MR. SIMPSON: Yes, Sir." (R. 724-726)
From the above excerpt from the record, it is clear the trial judge did not believe defense counsel had laid the proper predicate during the cross-examination of Metler which would justify the admission of the testimony of Tipton. However, the following portion of the record convinces us defense counsel did lay the proper predicate during his cross-examination of Metler.
 "Q Had you talked to Ben Tipton about it up in the jail?
"A No, sir.
 "Q Had you talked to Ben Tipton up in the jail and told him that you and John were putting it off on Gary?
"A No, sir." (R. 649) *Page 420 
While we believe the trial judge should have allowed Tipton to testify concerning the alleged prior inconsistent statement, we do not find his refusal to be reversible error for two reasons.
First, defense counsel should have asked the trial judge to allow the court reporter to read back the pertinent portion of Metler's testimony. The trial of this case consists of five volumes of transcript, and certainly the trial judge could not be expected to rely on his memory as to each detail about which each witness testified. Had defense counsel requested the court reporter to read back the testimony at issue, the question could have been answered immediately and this issue would not be before this court on appeal.
Secondly, as the State points out in its brief, the case is very similar to Ex Parte Harris, 428 So.2d 124 (Ala. 1983), in which the Alabama Supreme Court held, "[w]hen the evidence of the defendant's guilt is strong, the defendant must show that the trial court's error was prejudicial." (Citations omitted).
In Harris, supra, that Alabama Supreme Court stated that theadmission of the testimony of a prosecution witness concerning the existence of a prior inconsistent statement of another witness was not reversible error because `the admission of the prior inconsistent statement did not supply the jury any new information, but merely attacked [the witness'] credibility at trial, and was in no way damaging to this appellant.' (quoting from this court's opinion in Harris v. State, 428 So.2d 121
(Ala.Cr.App. 1981). The harmless error rule, Rule 45, A.R.A.P. was applied.
In the case before us, we are dealing with the exclusion rather than the admission of such testimony. However, we do not believe that Tipton's testimony would have supplied the jury with new information. The jury had already heard that Metler had been granted youthful offender status in exchange for his testimony. Further, the credibility of Metler's testimony was already in question because a member of the Huntsville Police force had testified that Metler's reputation for truth and veracity was bad and that he would not believe him under oath.
As we stated earlier in the opinion, the evidence of the appellant's guilt was substantial. The appellant has failed to convince us the exclusion of Tipton's testimony prejudiced him to any extent. This issue is one to which the harmless error rule can be properly applied.
Therefore, the exclusion of Tipton's testimony did not deny the appellant a fair trial. Rule 45, A.R.A.P.
 VI
The appellant alleges that the prosecutor's conduct during the course of the trial created a prejudicial atmosphere and denied him the right to a fair and impartial trial. The appellant refers to instances in which the prosecution (1) made offers to introduce evidence during the cross-examination by defense counsel of several state witnesses, (2) commented about the appellant's manner of dress, (3) introduced into evidence a photograph of the victim in front of a Christmas tree, (4) questioned several witnesses about other crimes in which the appellant allegedly was involved, and (5) commented about the guilt of the appellant.
We must analyze each of these instances, individually and collectively, to determine whether the appellant was prejudiced by the prosecution's conduct.
During the cross-examination of several State witnesses by defense counsel, the prosecutor offered to introduce into evidence statements of certain witnesses and the results of examinations made by Dr. Buttram and Dr. Aguilar and their reports. The appellant has no grounds for complaint about the prosecutor's action because defense counsel had continuously referred to the items during his examination of the witnesses. Further, the trial judge told the prosecutor that cross-examination by the opposing party was not the proper time to offer evidence for admission and *Page 421 
the trial judge did not allow these items to be admitted into evidence.
Following this prosecutor's question to one of the State's witnesses as to whether the appellant usually wore a coat and tie outside the courtroom, the trial judge promptly told the jury the appellant was free to wear anything he wants. The trial judge's instruction certainly removed any prejudicial inferences the jury could have drawn from the question.
There was nothing inflammatory or improper about the State's introduction of the photograph of the victim. It was used only to assist the witnesses in the identification of the victim.Ellenburg v. State, 353 So.2d 810 (Ala.Cr.App. 1977).
Testimony, elicited by the prosecutor concerning the appellant's alleged involvement in another murder, a theft and a scheme to kill his wife, was not improper. Defense counsel opened up these matters during his examination and therefore these matters were properly within the scope of the prosecutor's examination.
 VII
During the closing argument by the prosecutor, the following occurred:
 "MR. CRAMER: I prosecute Gary Wade Williams with enthusiasm because I am convinced he killed Sandra Phillips that night. I am convinced he is a killer and I am convinced he could do it again.
 "MR. MAUNEY: We object to what the District Attorney is convinced of. That is not proper argument.
"THE COURT: Sustained." (R. 908)
This court has long condemned the practice of attorneys expressing their personal views as to the guilt or innocence of the defendant to the jury during arguments. Knighten v. State,35 Ala. App. 524, 49 So.2d 789 (1950); McColston v. State,20 Ala. App. 591, 104 So. 347 (1925); Gilbert v. State, 19 Ala. App. 104,95 So. 502 (1923); Woods v. State, 19 Ala. App. 299,97 So. 179 (1923); Mitchell v. State, 50 Ala. App. 121, 277 So.2d 395
(1973).
However, when the improper argument is a mere expression of opinion based on the evidence and does not injuriously affect the substantial rights of the defendant, then there is no error for reversal. Mitchell v. State, supra; Gilbert v. State, supra; Gardner v. State, 17 Ala. App. 589, 87 So. 885 (1920),205 Ala. 60, 87 So. 888 (1920); Tucker v. State, 28 Ala. App. 492,188 So. 276 (1939); Cranmore v. State, 41 Ala. App. 276,129 So.2d 121 (1961).
In light of the fact the prosecutor stated, "I am convinced . . .", his statement constitutes an expression of his opinion based on the evidence presented at trial. We find that the appellant was not prejudiced by this remark.
Furthermore, had we found this remark to be prejudicial to the appellant, it still would not constitute a cause for reversal. Even though the appellant contends the trial judge should have given curative instructions, we do not believe this was necessary here. First of all, the appellant failed to ask the trial judge to so instruct the jury. Secondly, the trial judge immediately sustained defense counsel's objection to the prosecutor's remark. Any prejudicial effect of this statement was eradicated by the trial judge's prompt action. Downs v.State, 45 Ala. App. 415, 231 So.2d 336 (1969); Carroll v. State,440 So.2d 343 (Ala.Cr.App.) and cases cited therein, cert. denied, 440 So.2d 343 (Ala. 1983).
It is clear to this court, after reviewing the record, that the prosecutor's conduct during trial did not create a prejudicial atmosphere which would have denied the appellant a fair and impartial trial.
This record is free of error. Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 422