Terry Willard Parker was indicted for the murder of Russell Dye, in violation of § 13A-6-2, Code of Alabama 1975 and the assault inthe first degree on Gary Dye, in violation of §13A-6-20, Code of Alabama 1975. The jury found the appellant "guilty" of both offenses. The trial judge sentenced the appellant to twenty years on the murder conviction and ten years on the assault conviction, with the two sentences to be served consecutively.
On March 23, 1984, at 9:41 p.m., Kenneth Goodwin of the Lawrence County Sheriff's Department answered a call at the *Page 1337 
intersection of Highway 24 and County Road 27. This intersection is commonly referred to as Compton's Crossing. Goodwin pulled into the parking lot of Bob's Country Mart. He saw Russell Dye lying on the ground behind a pickup truck. Several men were standing around Russell Dye. Goodwin could not find a pulse on Russell Dye.
Goodwin then saw Gary Dye standing next to the truck with blood on his stomach. Gary told Goodwin he was all right and asked him to take care of his brother. Goodwin then got Gary to lie down.
Goodwin secured the scene until other officers and the ambulance arrived.
Doyle Cahela, the coroner of Lawrence County, arrived at Bob's Country Mart at 10:01 p.m. He examined Russell Dye and found no pulse or heartbeat. He saw what appeared to be a stab wound to Russell's chest. Cahela searched Russell's pockets for weapons but could not find any. Russell's body was then transported to Elliott's Funeral Home.
Ed Weatherford, an investigator for the Lawrence County District Attorney's Office, went to the scene at 10:17 p.m. After processing the scene, he went to the residence of the appellant's parents. When he arrived, he was met by Hillsboro Policeman Randy Morgan. The appellant's father, Coy Parker, gave Weatherford a wooden stick.
Weatherford noticed a red mark on Coy Parker's head and a red mark on the appellant's arm.
Michael Davis testified that he was at Bob's Country Mart on the night of March 23, 1984. When he pulled into the parking lot, he heard a stick hit a car. When Davis got out of his truck, he saw the appellant and Russell Dye fighting between a car and a truck. He then saw a third person hit Russell across the face with a stick. Russell fell beside the truck and, when he got up, Davis saw blood on his shirt. Russell Dye began walking toward the back of the truck and the appellant said he would cut Russell again. The appellant then hit Russell on the back of the head. Davis saw a knife in the appellant's hand at this point. Russell Dye then fell to the ground. Davis never saw Russell with a knife or any other weapon.
Davis then saw Gary Dye in front of the car. The man with the stick drew back like he was going to hit Gary and Gary ran into the highway. The man then left with two sticks.
O'Neal Terry, an auxiliaryman with the Lawrence County Sheriff's Department, found a half case of beer in the back of Russell's truck. He did not find any weapons in the truck.
Gary Dye stated that he and his brother, Russell, were both employed as carpenters on March 23, 1984. On their way home from work, the two stopped and bought some beer. When they arrived at the Five Points Community Trailer Park, Russell went to his trailer, and Gary went to his.
At 6:00 p.m., Gary saw Russell and he was upset. At 7:30 p.m., Gary and Russell drove to Bob's Country Mart. After Russell made a phone call, the two rode down by the ball field and came back to the Country Mart. When they pulled in, Russell saw the appellant.
Russell got out of the truck and walked over to the appellant's car. The appellant and Russell started fighting. Gary saw Coy Parker swing a stick at Russell from behind. Gary got out of the truck and got the appellant away from Russell.
At some point, Gary heard Russell say, "Watch him, they have got a knife." (R. 315). As Gary and the appellant were struggling, the appellant cut Gary Dye.
The next thing Gary remembers is standing next to the truck. He saw Russell Dye lying on the ground and the appellant and Coy Parker running. He asked someone to call the police.
Gary Dye said he was transported to the hospital and stayed seven days. He testified that neither he nor his brother had any weapons that night.
Gary admitted that he had said in his statement that Russell Dye was looking for the appellant on that night. *Page 1338 
Christi Erice Dye testified that she was married to Russell on March 23, 1984. She stated that she and the appellant had dated prior to her marriage and that she had a child by the appellant. The child was living with her, and Russell Dye supported the child. Christi and Russell had been married for three months and, during that time, the appellant had been to their trailer three times.
On the morning of March 23, 1984, the appellant came to their trailer. Christi was there with her child. The appellant told Christi he had some beer and asked her to go riding around. She told him no. The appellant said Russell wouldn't find out and asked Christi if Russell Dye knew what he looked like. She replied that he didn't. Christi told the appellant that Russell would be nice to him when they met. She told him, if he wanted to see their child, he would have to come over when Russell was home.
During the time the appellant was at the trailer, he showed her a knife that he had bought. The appellant then left.
When Russell Dye got home from work, Christi told him about the appellant coming to the trailer. Around 9:30 p.m., Russell and Gary left the trailer in Russell's truck. They did not have any weapons when they left. Before the two left, Gary told Russell he wasn't going to go look for trouble. Russell Dye replied that he wasn't looking for trouble but he wanted to talk to the appellant.
Paul McClusky testified that he saw two men fighting when he drove by Bob's Country Mart at approximately 9:30 p.m. on March 23, 1984. McClusky saw Coy Parker hit Russell on the back of the head. Russell Dye fell to the ground and McClusky parked so he could help Russell. As he was walking towards Russell, Coy Parker was leaving with two sticks in his hand.
McClusky and M.C. Terry pulled up Russell Dye's shirt and told someone to call an ambulance. McClusky bandaged the wound and when Russell quit breathing, he and Terry performed CPR.
M.C. Terry testified that he stopped at Bob's Country Mart on March 23, 1984 with his wife and child. He saw the appellant leaning against a car. Russell then got out of a truck and he and the appellant began arguing.
Russell hit the appellant and the two began fighting. At some point while Russell Dye was leaning over, the appellant came up from under Russell with his hand. Russell then went to the truck and told his brother to leave "because they have already got me." (R. 385). While Russell Dye was leaning on the tail gate of his truck, the appellant hit Russell on the head. The appellant had a knife in his hand. Then Coy Parker hit Russell on the head with a stick. Russell collapsed onto the ground.
Terry heard Russell Dye say, "Please, don't let me die." (R. 386). The appellant ran to his car and said, "I hope you die, you no good M. . . . F. . . ." (R. 387).
Terry said he did not see Russell or Gary Dye with any weapons.
Dr. Joseph Embry, a forensic pathologist with the Department of Forensic Sciences, performed the autopsy on Russell Dye. He determined the cause of death to be multiple stab wounds.
Dr. Emile Khouri testified that he treated Gary Dye at the Lawrence County Hospital on March 23, 1984. Gary had sustained a laceration to the upper part of the abdomen, which punctured the liver. Khouri stated that Gary's injury was serious and life threatening.
Roger Morrison, a criminalist with the Department of Forensic Sciences, testified that he found human bloodstains on the wooden dowel rod obtained from Coy Parker. The bloodstains were Type A. Both Russell and Gary Dye have Type A blood. The bloodstains on Russell's clothes were Type A. Numerous cuts were found in Russell's shirt and jeans.
Mamie Parker, the appellant's mother, stated she received a phone call on March 23, 1984, and the person asked for the *Page 1339 
appellant. She told the person he couldn't come to the phone. The person identified himself as Rusty and told her to tell the appellant to leave Christi alone. About thirty minutes later, the phone rang again and the appellant answered. After he hung up, the appellant left the house. A few minutes later, her husband, Coy Parker, left the house. Parker testified that neither the appellant nor Coy Parker had been drinking.
She stated that Coy Parker did not have a stick but the appellant usually carried a knife. When Coy Parker and the appellant returned home, Coy Parker had a knot on his head and the appellant had a hurt arm. Coy Parker said he'd been hit on the arm with a stick. He had a stick with him.
Randy Treadway was working at Bob's Country Mart on the night in question. He testified that one of the Dyes got a stick out of the truck that night. He saw Gary and Coy Parker hit each other with a stick.
Treadway saw Russell Dye fall to the ground. The appellant then hit Russell on the head with the butt of a knife. He did not see Russell with a weapon.
Renee Russell stated that while she was outside of the Parker's house on March 23, 1984, talking to the appellant, a green pickup truck passed by three times.
Billie Jo Morgan testified that she and her husband were visiting the Parkers on the evening of March 23, 1984. At some point, the phone rang and Mamie Parker answered. An hour later, the phone rang again and the appellant answered. The appellant left the house followed by Coy Parker. They returned about fifteen minutes later and the appellant's arm was swollen and Coy Parker had a knot on his head.
The appellant stated he went over to Russell and Christi Dye's trailer on the morning of March 23, 1984. He stayed about twenty minutes and left.
At approximately 8:30 that night, a green pick-up truck drove by his house a few times while he was standing outside talking to Renee Russell.
A short while later, the appellant went inside and the phone rang. When he answered it, a person said he was a good friend of his and wanted to talk to him. The person told him to meet him at Bob's Country Mart.
When the appellant got to Bob's, he got out of his car. A green pick-up truck pulled in and Russell got out of the truck. Russell asked the appellant if he'd been fooling around with his wife. The appellant said he didn't know what he was talking about.
Russell Dye then hit the appellant and they began fighting. When Coy Parker arrived, Russell got a stick out of his truck and told Gary to help him. Russell hit Coy Parker on the head with the stick and hit him on the arm. Coy Parker got the stick away from Russell and Russell ran toward the appellant. The appellant had his knife in his hand and he and Russell began fighting again. He admitted hitting Russell on the back of the head. The appellant stated he didn't intend to kill Russell.
The appellant stated he fought with Gary Dye but didn't know he cut him until he saw blood. After the fight, the appellant went home and threw the knife into the woods.
 I
The appellant contends that his motions for a mistrial and a new trial should have been granted because allegedly prejudicial testimony was allowed into evidence.
In brief, the appellant quotes lengthy portions of testimony from the record about which he now complains. Our examination reveals that the appellant only objected twice during the testimony he quotes to this court. On both of those occasions, the trial judge promptly sustained his objections. On neither occasion did the appellant ask for curative instructions. Therefore, there is no adverse ruling for this court to review.
Furthermore, the trial judge, during his oral charge, instructed the jury not to consider any matters which were objected to *Page 1340 
and such were sustained. Any prejudice to the appellant that resulted from the testimony which was quoted to this court was eradicated by the trial judge's action. Thus, we find no error here. See Williams v. State, 451 So.2d 411 (Ala.Crim.App.), cert. denied, 451 So.2d 411 (Ala. 1984). Also Retowsky v.State, 333 So.2d 193 (Ala.Crim.App. 1976).
We hold the trial judge did not abuse his discretion in denying the appellant's motion for a mistrial and a new trial. See Shadle, 280 Ala. 379, 194 So.2d 538 (1967).
 II
Prior to trial, the appellant filed a motion to discover all results of any scientific tests or experiments conducted in connection with his case. The trial judge granted this motion and the State allegedly complied with this request.
During the cross-examination of Roger Morrison, he testified that he had conducted a test of a sample of Gary Dye's blood and determined that it was Type A.
Defense counsel complained that he was not furnished with a report concerning Gary Dye's blood type. The prosecutor insisted that he had no prior knowledge that a blood sample of Gary Dye was taken.
Later in the trial, the prosecutor brought to the attention of the trial judge that he had found a report that a blood alcohol analysis had been done on Gary Dye. He stated that the report had unintentionally been placed in the file pertaining to Coy Parker. Defense counsel once again complained about the fact that he had not received a copy of this report.
The appellant now asserts that the nondisclosure by the State of Gary Dye's blood type and blood alcohol content was a violation of the rule set out in Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In Brady, supra, the United States Supreme Court held,
 ". . . that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
Brady, supra, at 83 S.Ct. 1196-1197.
 "A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."
United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 2398,49 L.Ed.2d 342 (1976).
As the State points out in its brief, we fail to see how the fact that Gary Dye had Type A blood and a blood alcohol content of .18 affected the outcome of this trial. The appellant admits stabbing both Russell and Gary Dye. Nowhere in his brief does the appellant contend that the knowledge of Gary Dye's blood type would have any bearing on his guilt or punishment. He does claim that knowledge of Gary Dye's blood alcohol content would have affected Gary Dye's credibility. While we agree that Gary Dye's degree of intoxication may have affected his credibility, there is evidence in the record that Gary Dye was drinking on the night in question.
 "Even where there is total nondisclosure of information the test is whether the use of the information at trial would have changed the result by creating a reasonable doubt where one did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Jones v. State, 396 So.2d 140 (Ala.Cr.App. 1981). As the United States Supreme Court stated in Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98
(1962):
 "`While this Court stands ready to correct violations of constitutional rights, it also holds that it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 *Page 1341 
[76 S.Ct. 965, 970, 100 L.Ed. 1331] (1956)."
Raines v. State, 429 So.2d 1104 (Ala.Crim.App.), affirmed,429 So.2d 1111 (Ala. 1982).
We hold that the appellant did not meet this burden in the case at bar. We fail to see how the appellant was prejudiced by the late disclosure of the blood type and the blood alcohol content of Gary Dye. The appellant's motion for mistrial on this issue was properly denied.
 III
The appellant ". . . submits that Gary Dye's injuries were pursuant to and in continuation of the affray with Russell Dye and done under the impulse of the same design; therefore, the judgment of acquittal should have been granted as to the assault on Gary Dye. . . ." (Appellant's brief, p. 27).
 "Sometimes as a part of a single transaction more than one offense is charged to have been committed. If a person does a single act which results in the injury or death of more than one person, only one offense can be fastened upon him. But if in that occurrence he shoots different persons by different discharges of his firearm, an offense can be fastened separately as to each person so injured or killed, although there was but one transaction, and upon a trial for one such offense the whole transaction is admissible. Smith v. State, 88 Ala. 73, 76, 7 So. 52; Cheek v. State, 38 Ala. 227; Gunter v. State, 111 Ala. 23, 20 So. 632; Grissett v. State, 241 Ala. 343, 2 So.2d 399."
Kilpatrick v. State, 257 Ala. 316, 59 So.2d 61 (1952); Clementsv. State, 390 So.2d 1131 (Ala.Crim.App.), writ denied,390 So.2d 1136 (Ala. 1980); Free v. State, 455 So.2d 137
(Ala.Crim.App.), cert. denied, 455 So.2d 137 (Ala. 1984). (Emphasis added.)
The appellant stabbed Russell and Gary Dye at different times even though it was during one fight. Therefore, the appellant was properly charged with the murder of Russell Dye and the assault of Gary Dye. The trial judge correctly denied the appellant's motion for judgment of acquittal on the assault charge.
The judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All Judges concur.