The appellant was convicted of the offense of conspiracy to commit murder done for hire, in violation of § 13A-4-3,Code of Alabama (1975), and was sentenced to a term of fifty years in the State penitentiary.
The Dreamers Teen Club, a nightclub or lounge, was a business of five partners: Ricky Gaskin, Steve and Judy Fowler, Steve Cleckler, and Jeff Sheffield. Differences of opinion and dissension arose among the partners concerning the Fowlers' management of the club, as well as personal problems concerning Steve Cleckler's relationship with Mrs. Fowler's sister. Ricky Gaskin testified that he met several times with Cleckler and told him that he wanted to get Mr. Fowler out of the club; after several meetings Gaskin informed Cleckler that he should speak to Lynn Johnson about getting rid of the Fowlers. Gaskin further testified that a rendezvous was arranged between Johnson, Cleckler, and himself and that by the terms of the arrangement agreed upon Gaskin and he would each have to pay Johnson $1,000. At the meeting, Cleckler and Johnson agreed that Christmas would be a good time for "it" to happen. Gaskin testified that Johnson told him to inform the appellant that he had a job to do; later, Johnson told the appellant that the job was to "take care" of the Fowlers. Gaskin further testified that he met subsequently with Johnson and the appellant and they discussed getting a gun and the disposal of the body. Soon thereafter, Gaskin again met with Johnson and the appellant and gave them his .357 Wesson pistol and Johnson indicated that the crime would take place on December 26.
The following is Gaskin's testimony as to the events of December 26: He received a telephone call from Johnson setting up a meeting and, at that meeting, the appellant outlined the plans for killing Fowler. The appellant stated that Lynn Johnson would call Fowler and ask him to go down to the club so that his game machines could be serviced, whereupon Fowler would be shot in the "bay" area of the club. The appellant, *Page 1188 
Johnson, and Gaskin then went to the club to insure that no one was there and next went to an Arby's restaurant. Johnson told the appellant to go to the club and wait. He then called Fowler, telling him to go down to the club so that he could repair the game machines and divide the money. Johnson went to the club to tell the appellant that Fowler was on his way. Johnson and Gaskin then parked across the street and saw Fowler drive up without his wife, whereupon Johnson stated that they had to stop the murder because Mrs. Fowler knew that it was he who had called. However, before Johnson could get inside the club, they heard four shots being fired; Gaskin testified that he then observed Fowler lying on the floor. Gaskin and Johnson mopped the floor, put the body in a bag, and then Gaskin drove to Georgia to dispose of the mop, bucket, and body. Gaskin testified that he subsequently met with Johnson and the appellant and that the appellant attempted to disassemble the pistol used to murder Fowler; however, he eventually threw the gun off of a bridge. Gaskin indicated at trial that an agreement had been made pursuant to his role in the commission of this offense and that he had been indicted for conspiracy to murder Judy Fowler. Cleckler also testified for the State; he had been charged with conspiracy to murder Steve and Judy Fowler and had pleaded guilty.
 I.
The appellant contends that it was reversible error to admit as evidence prejudicial matters alleging a separate crime of murder committed prior to the offense being tried. During the defense counsel's cross-examination of State's witness Gaskin, the following transpired:
 "Q. Well, now Mr. Campbell . . . ya'll hadn't talked about Mr. Campbell killing anybody up to that point had you? Up to that meeting.
"A. About Mr. Fowler?
"Q. About anybody?
 "A. Yes, sir. Lynn told me something about possibly another crime.
 "Q. What did Mr. Campbell say when you said, 'You've got to kill somebody,' we want you . . . a job to do?
"A. He said, 'Okay.'
"Q. What were his exact words?
 "A. I don't recall his exact words. He just agreed and said, 'Okay.' "
Later, on re-direct examination and after a bench conference in which the trial judge heard the arguments of both parties concerning the following subject matter, the prosecutor asked over objections:
 "Q. Mr. Gaskin, I think the last thing that I asked you before we recessed was something about a crime that Mr. Johnson had mentioned to you?
"A. Yes, sir.
 "Q. If you would, I wish you'd tell the court and the jury exactly what crime it was that Mr. Johnson had mentioned to you?
 "DEFENSE COUNSEL: Object at this point, Your Honor, on the same grounds. It's prejudicial, irrelevant and immaterial to these issues.
"THE COURT: Overruled.
"Q. You can answer, Mr. Gaskin.
 "A. Mr. Johnson told me that Mr. Campbell had killed a man by the name of Walls.
"DEFENSE COUNSEL: May we approach the bench?
(At the bench.)
 "DEFENSE COUNSEL: Your Honor, I object to that and move it be stricken from the record and the jury be instructed to disregard it or in the alternative, move for a mistrial on the grounds that such statement is solely prejudicial, has no probative value and its sole effect on this defendant is to prejudice his rights in this case.
 "PROSECUTOR: Our position is, Your Honor, it was brought out in cross and we're entitled to go into it on redirect. "THE COURT: Motion denied."
"[O]n redirect examination, the object is to answer any matters brought out on the cross-examination of the witness by his adversary. Whether, on redirect examination, a party may elicit from his witness *Page 1189 
matters which do not rebut that which was brought out on cross-examination is within the discretion of the trial court." C. Gamble, McElroy's Alabama Evidence, § 439.01(1) (3d ed. 1977). The State argues that the defense counsel had opened the door to such questioning by asking on cross-examination whether Gaskin and Johnson had talked about "Mr. Campbell killing anybody up to that point." The prosecution also noted that the defense counsel did not request that Gaskin's response in which he referred to "possibly another crime" be stricken or that the jury be instructed to disregard the testimony.
In Williams v. State, 451 So.2d 411
(Ala.Cr.App. 1984), where the prosecutor elicited testimony regarding "the appellant's alleged involvement in another murder, a theft and a scheme to kill his wife, [the trial court held that this testimony] was not improper. Defense counsel opened up these matters during his examination and therefore these matters were properly within the scope of the prosecutor's examination." Id. at 421. See alsoAdkins v. State, 481 So.2d 431 (Ala.Cr.App. 1985) (wherein, on direct examination of a defendant in a rape case, he stated that he was driving the car while extremely intoxicated, and therefore he could not later object to the prosecutor's question on cross-examination as to whether he usually drove his family around while he was intoxicated). InGreen v. State, 352 So.2d 1149 (Ala.Cr.App. 1977), the defendant had indicated on direct examination that he was in trouble at the time of the incident which was the subject of the prosecution; he therefore "opened up the subject of the trouble he was in, thus permitting cross-examination with reference to such trouble." Id. at 1150.
Under the doctrine of curative admissibility, " '[i]f illegal evidence is introduced by one party and admitted, then the opponent has the right to introduce illegal evidence in rebuttal. . . .' " Morgan v. State, 440 So.2d 1240,1241 (Ala.Cr.App. 1983), quoting Wyrick v. State,409 So.2d 969 (Ala.Cr.App. 1981), and the "appellant cannot [later] be heard to complain about exploration of the issue . . . which he himself improperly injected into the trial." Id.
"Rebuttal evidence, even evidence of prior crimes, is generally admissible within the sound discretion of the trial court.Vincent v. State, 231 Ala. 657, 165 So. 844 (1936);Jones v. State, [362 So.2d 1303 (Ala.Cr.App. 1978)];Norris v. State, 429 So.2d 649 (Ala.Cr.App. 1982)."Peterson v. State, 452 So.2d 1372 (Ala.Cr.App. 1984). Although in the present case the State was not attempting to rebut the evidence offered by the defense counsel on cross-examination of the witness, but rather to expand on it, the defense counsel clearly opened the door to the State's subsequent questioning, as in the case of a rebuttal.
 II.
The appellant claims that the trial court committed reversible error in failing to grant his motion for judgment of acquittal on the grounds that the State's case was based solely on the testimony of an accomplice. "A conviction of felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or circumstances thereof, is not sufficient." Code ofAlabama (1975), § 12-21-222. While Gaskin and Cleckler were clearly accomplices to the offense, State's witness Jeff Sheffield was not an accomplice as a matter of law. The testimony of Gaskin, Cleckler, and Sheffield indicates that Sheffield was never present when the hiring of the appellant to kill Fowler was discussed.
In his testimony, Sheffield admitted to having problems with the Fowlers management of the club, as well as personality conflicts with them. He indicated that he, along with Gaskin and Cleckler, had spoken to a lawyer, but to no avail. Sheffield stated that Gaskin told him that he had heard "down the grapevine something about a contract on Steve Fowler" and that Gaskin had advised Sheffield to stay away from the club around Christmas time. Sheffield testified that he drove by the Dreamers Club around 10:00 a.m. and observed *Page 1190 
Johnson's van and Gaskin's father's car in the parking lot. As he passed back by the club, he saw Fowler's car being driven away from across the street and he identified the appellant as the driver. Sheffield testified that he and his brother went to the club later that morning, but that Johnson yelled "Get 'em out." Later that same night, he went to Gaskin's house and was told by him that "Steve was gone." The trial court held as a matter of law that Sheffield was not an accomplice. "Whether a witness is an accomplice may be a question of law or fact, depending on the circumstances. Where there is a doubt or dispute concerning the complicity of a witness and the testimony is susceptible to different inferences on that point, the question is for the jury. See Jacks v. State,364 So.2d 397 (Ala.Crim.App.), cert. denied, 364 So.2d 406
(Ala. 1978)." Ex parte Bell, 475 So.2d 609, 611-12
(Ala. 1985).
Furthermore, the State presented other evidence which it claims tended to strengthen the accomplices' testimony. Several law enforcement officers corroborated Ricky Gaskin's testimony concerning where he had disposed of a holster, pouch, mop and bucket. The testimony concerning the area of the club where blood had to be mopped up tested positive for blood by the police officers. Fowler's landlord verified that he had been telephoned twice on the day of the murder. Additionally, appellant's own statement put him with the accomplice Lynn Johnson at the time and place of the murder. However, this is not the type of corroboration that tends to connect the accused with the crime and is not the type of legal corroboration required under Alabama Code (1975), § 12-21-222. " 'Evidence which merely tends to confirm the general credibility of an accomplice, as distinguished from confirming the accomplice in such a way as to connect the accused with the commission of the crime, is insufficient as corroboration.' "Jackson v. State, 451 So.2d 435, 437
(Ala.Cr.App. 1984).
Because the burden of proving that a witness is an accomplice is on the defendant, Moon v. State, 460 So.2d 287, 290
(Ala.Cr.App. 1984), and clearly this burden was not met, Jeff Sheffield's testimony was properly used to corroborate the testimony of Gaskin and Cleckler.
 III.
The appellant argues that it was reversible error not to grant his motion to dismiss the indictment and his motion for a new trial on the grounds that the indictment was "multiplicitous and duplicitous" and did not sufficiently inform him of the charges. The appellant's conviction for conspiracy to commit murder for hire was based on Count II of the indictment, which the appellant argues charges two separate and distinct offenses. This count states: "The grand jury of said county further charges that before the finding of this indictment, Bobby Campbell, alias Bobby Lain Campbell, alias Bobby Lynn Campbell, alias Bobby L. Campbell, whose name to the Grand Jury is otherwise unknown than as stated, did agree with Lynn Benjamin Johnson, Steven W. Cleckler, and Ricky G. Gaskin to commit the crime of Murder Done for Hire. Code ofAlabama, 1975, Title 13A, Section 13A-5-40(a)(7), with the intent that conduct constituting said offense be performed and that Steven W. Cleckler did obtain and pay to Lynn Benjamin Johnson the sum of one thousand and no/100 ($1000) to have Steven Earl Fowler, Jr., murdered, and that Bobby Campbell, alias Bobby Lain Campbell, alias Bobby Lynn Campbell, alias Bobby L. Campbell did intentionally cause the death of Steven Earl Fowler, Jr., by shooting him with a pistol, in furtherance of said crime, in violation of Code of Alabama, 1975, Title 13A-4-3, contrary to law and against the peace and dignity of the State of Alabama." The appellant argues that Count II charges two separate and distinct offenses, "a capital and a non-capital offense, to-wit: murder for hire and conspiracy to commit murder for hire."
Conspiracy, which is an inchoate crime, is a substantive offense separate and distinct from the crime intended or contemplated to be consummated by the conspirators. Calhounv. State, 460 So.2d 268 (Ala.Cr.App. 1984); O'Leary v.State, 417 So.2d 219 *Page 1191 
(Ala.Cr.App. 1981), affirmed, 417 So.2d 232 (Ala. 1982). According to Rule 15.3(a), Alabama Temporary Rules of Criminal Procedure, "[t]wo or more offenses may be joined in an indictment, information, or complaint if they: (i) are of the same or similar character; or (ii) are based on the same conduct or are otherwise connected in their commission; or (iii) are alleged to have been part of a common scheme or plan. Offenses shall not be joined in the same count of an indictment or information."
 "Duplicity is the charging of separate offenses in a single count. This practice is unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately and may make it difficult to determine whether the conviction rested on only one of the offenses or both. Duplicity can result in prejudice to the defendant in the shaping of evidentiary rulings, in producing a conviction on less than a unanimous verdict as to each separate offense, in sentencing, and limiting review on appeal, and in exposing the defendant to double jeopardy." La Fave and Israel, Criminal Procedure § 19.2(e) (1984).
However, according to Alabama Temporary Rules of Criminal Procedure, Rule 16.2(a), "[o]bjections based on defects in the commencement of the proceeding or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion made in accordance with Temporary Rule 16.3." Duplicity does not rise to the level of a failure to charge an offense. "A valid duplicity objection raised before trial will force the government to elect the offense upon which it will proceed, but will not require the dismissal of the indictment. If a pre-trial objection is not made, but the defect is noted before the case is submitted to the jury, the trial court can still cure the error by making a corrective instruction. An objection first raised after verdict, however, is viewed as waived." La Fave and Israel, Criminal Procedure § 19.2(e) (1984) (citing United States v. Berardi, 675 F.2d 894
(7th Cir. 1982) at n. 116; United States v. Robinson,651 F.2d 1188 (6th Cir. 1981), cert. denied,454 U.S. 875, 102 S.Ct. 351, 70 L.Ed.2d 182 (1981). Therefore, a motion concerning a duplicitous count in an indictment must be made in accordance with Temporary Rule 16.3. This rule states:
 "Any motion which must under Temporary Rule 16.2 be made before trial must be made:
 (1) In circuit court at or before arraignment or by such later date as may be set by the court; and
 (2) In district court or municipal court at the time of or before entering a plea."
The record contains no indication that an extension of time for such pre-trial motions was either requested or granted. Furthermore, the appellant entered his plea of not guilty at arraignment on February 22, 1985, and did not file his motion to quash the indictment until April 15, 1985; therefore, this claim had been waived.
 IV. The appellant argues that it was reversible error for the trial court to deny his timely motion to instruct the jury to disregard evidence concerning a prior crime allegedly committed by him. This matter was fully discussed under Issue I.
 V.
The appellant claims that the verdict was contrary to the great weight of the evidence. The appellant was found guilty by the jury of conspiracy to commit murder for hire, in violation of Code of Alabama (1975), § 13A-4-3, which provides in pertinent part:
 "A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed he agrees with one or more persons to engage in or cause the performance of such conduct, and one or more of such persons does an overt act to effect an objective of the agreement."
The State presented evidence of the appellant's role in the murder through the testimony of Rick Gaskin, Steve Cleckler, and Lynn Johnson. The appellant admitted *Page 1192 
that he was at the club at the time and place of the murder and, further, he was observed driving the victim's automobile from the scene of the crime by Jeff Sheffield. The State also provided testimony to support various details of the testimony and statements of the confessed conspirators. Thus, the State presented sufficient evidence to allow this case to go to the jury. A conspiracy need not be proved by direct and positive evidence, but may be inferred from the conduct of the parties and all the circumstances accompanying the doing of the act.Stinson v. State, 401 So.2d 257 (Ala.Cr.App.),cert. denied, 401 So.2d 262 (Ala. 1981).
AFFIRMED.
All the Judges concur.